1  COLEMAN & BALOGH LLP
   ETHAN A. BALOGH, No. 172224
2  225 Bush Street, Suite 1600
   San Francisco, CA 94104
3  Direct: 415.439.8347
   Facsimile: 415.373.3901
4  eab@colemanbalogh.com

5  Attorneys for Defendant
   JUDITH SOSA

6

7

8                 UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,          Case No.  08-0730 WHA

12        Plaintiff,                   DEFENDANT JUDITH SOSA'S
                                       MOTION TO ENFORCE *BRADY V.*
13                                     *MARYLAND*

14        v.                           **EVIDENTIARY HEARING REQUESTED**

15  IVAN CERNA, et al.

16        Defendants.                  Date:        June 24, 2009
                                       Time:        1:00 p.m.
17                                     Location:    Courtroom No. 9

18                                     Before the Honorable William H. Alsup
                                       United States District Judge
19

20

21

22

23

24

25

26

27

28

TO:   JOSEPH P. RUSSONIELLO, UNITED STATES ATTORNEY and WAI SHUN
      WILSON LEUNG, ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTICE that on June 24, 2009 at 1:00 p.m., or as soon thereafter as they

may be heard, defendants Judith Sosa, Marvin Carcamo, Melvin Maldonado, Cesar Alvarado,

Angel Guevara, Rodil Nochez, Jonathan Cruz Ramirez, Rafael Montoya, Aristides Carcamo,

Guillermo Herrera, Walter Chinchilla, Douglas Largaespada, Erick David Lopez, Mauricio Urias,

Walter Palma, Ivan Cerna, John Briez, and Marlon Lumong,  by and through their counsel, will

and do hereby move this Court to enter an Order enforcing *Brady v. Maryland*, 373 U.S. 83

(1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *Kyles v. Whitley*, 514 U.S. 419 (1995),

and requiring the production of all exculpatory and impeachment evidence the prosecuting

attorney knows about or could know about through the exercise of diligence.

## **MOTION**

Judith Sosa, Marvin Carcamo, Melvin Maldonado, Cesar Alvarado, Angel Guevara,

Rodil Nochez, Jonathan Cruz Ramirez, Rafael Montoya, Aristides Carcamo, Guillermo Herrera,

Walter Chinchilla, Douglas Largaespada, Erick David Lopez, Mauricio Urias, Walter Palma,

Ivan Cerna, John Briez, and Marlon Lumong, by and through their counsel, move this Court

pursuant to the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the

Sixth Amendment to the United States Constitution and all other applicable case law and statutes

for an Order requiring the government to produce all exculpatory and impeachment evidence the

prosecuting attorney knows about or could know about through the exercise of diligence.  This

request includes the production of all *Brady* evidence in the possession of all the authorities, be

they local, state, federal, or international that have worked on this joint investigation and/or have

worked with any of the government's witnesses have been relied upon to gather evidence and/or

to obtain search warrants and/or will be relied upon at trial.  The instant motion, as set forth more

fully in the accompanying memorandum of law, arises from the government's Notice that it will

only produce exculpatory and impeachment material in the possession of the Federal Bureau of

Investigation and the Department of Immigration and Customs Enforcement.  Docket Entry 266.

1       This motion is based on the instant notice of motion and motion, the attached

2   memorandum of points and authorities, and any and all other materials that may come to this

3   Court's attention at the time of the hearing on this motion.

                                        Respectfully submitted,

                                        COLEMAN & BALOGH LLP

DATED: May 12, 2009            By: ETHAN A. BALOGH
                                        225 Bush Street, Suite 1600
                                        San Francisco, CA 94104
                                        Direct: (415) 439-8347

                                        Attorneys for Defendant
                                        JUDITH SOSA

**Certification**

    The signer of this pleading attests that he has authority to submit this pleading and the attached memorandum on behalf of all defendants identified in this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

Judith Sosa asks the Court to issue an Order requiring the government to exercise the diligence mandated by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  This motion is required in response to three statements by the government in this case, as set forth below.

*First*, at the March 17, 2009 hearing before this Court, the government informed that court, in sum and substance, that "*Brady* claims can only be addressed after trial." (Ms. Sosa has paraphrased this statement pending receipt of the transcript, which she has requested.)

*Second*, on March 20, 2009, the government filed a Notice stating that "only Immigration and Customs Enforcement and the Federal Bureau of Investigation [are] its 'agents' for purposes of *Brady v. Maryland*, 373 U.S. 83 (1963)."  Docket Entry 266.

*Third*, in that same Notice, the government asserted that it "understands its obligations under *Brady* and its progeny and has been complying, and will continue to comply with these obligations."  *Id*.

The government is incorrect on all three counts.  Because of the grave consequences that will necessarily flow from the government's withholding of *Brady* materials in this case, and with due consideration for the high stakes involved in this case, this Court's attention and action are required now.

### II.  Facts

On October 16, 2008, a grand jury sitting in the Northern District of California returned a 52-count indictment against 29 individuals.  On January 29, 2009, the grand jury handed up its Second Superseding Indictment, now alleging 53 counts against 31 individuals.  The controlling indictment alleges a RICO conspiracy and substantive RICO and non-RICO causes of action arising from a majority of the defendants' alleged activities as purported members of the La Mara Salvatrucha street gang (hereafter "MS-13").[1]

---

[1]Ms. Sosa is not alleged to be a member of MS-13.  Rather, the government has alleged
(continued...)

1

1    This case is part of a nation-wide effort investigating and prosecuting alleged criminal

2    conduct by members of MS-13. *See* Docket Entry 194 at ¶¶ 1-26, Declaration of Ethan A.

3    Balogh in Support of Motion to Enforce *Brady v. Maryland* ("Balogh Decl.") Ex. A (USAO

4    press release), Ex. B (collected Department of Justice ("DOJ") and Federal Bureau of

5    Investigation ("FBI") press releases). It has been investigated in a joint effort by the FBI, the

6    United States Drug Enforcement Administration ("DEA"), the United States Department of

7    Homeland Security ("DHS"), including its Department of Immigration and Customs

8    Enforcement ("ICE"), the Department of Justice in Washington D.C. ("Main Justice" or "DOJ"),

9    the San Francisco Police Department ("SFPD"), the California Highway Patrol ("CHP"), the

10   Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the San Mateo County Gang

11   Task Force ("SMCGTF"), the South San Francisco Police Department ("SSFPD"), the California

12   Department of Justice ("CDJ"), the California Bureau of Narcotics Enforcement ("BNE"), and

13   the El Salvadoran National Police, among others. Balogh Decl. ¶ 2 & Ex. A.

14   Contrary to the government's March 20 Notice, this case constitutes a "coordinated effort

15   by federal, state and local law enforcement agencies[,]" including each the agencies listed above.

16   Balogh Decl. Ex. A (USAO press release). Moreover, the government had made clear that this

17   prosecution arose from ICE's "partner[ship] with federal, state and local law enforcement

18   agencies" to target MS-13 as a violent organization, an operation ICE began in 2005. *Id*. This

19   case is being prosecuted by one local attorney, and a second attorney from Main Justice's

20   Criminal Division gang squad. *Id*. The appearance of trial counsel from Main Justice makes

21   sense considering that this prosecution stands as but one portion of a nationally-organized

22   investigation of alleged members of MS-13. *See* Balogh Decl. Ex. B.

23   ////

24   _____

25   [1](...continued)

26   that Ms. Sosa had a romantic relationship with one alleged member, Mauricio Urias, and that
     with him and another non-member, John Briez, she (1) allegedly engaged in a conspiracy to
     possess with intent to distribute methamphetamine, and (2) allegedly possessed with intent to

27   distribute methamphetamine on four separate occasions between May 2006 and January 2007.

28   Docket No. 194, Counts 26-30.

2

The discovery produced to date reflects that the government has exercised diligence to obtain purportedly inculpatory evidence from the FBI, ICE, ATF, the Immigration and Naturalization Service ("INS"), DEA, DHS, CHP, the Reno Police Department ("RPD") SFPD, Alameda County Police Department ("ACPD"), the Richmond Police Department ("RMPD"), the Burlingame Police Department ("BPD"), the San Mateo County Sheriff's Department ("SMCSD"), the Los Angeles County Coroner Forensics Lab ("LACCFL"), the Contra Costa County Sheriff's Department ("CCCSD") and the Santa Clara County Crime Lab ("SCCCL"). Balogh Decl. ¶ 3.  The same diligence should be required with respect to obtaining and producing exculpatory evidence.

## III.  Argument

"The prosecution's affirmative duty to disclose evidence favorable to a defendant can trace its origins to early 20th-century strictures against misrepresentation and is of course most prominently associated with th[e United States Supreme] Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963)." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995).  *Brady* evidence constitutes "evidence [that is] favorable to the accused, because it is either exculpatory or impeachment material**.**" *Benn v. Lambert*, 283 F.3d 1040, 1052 (9th Cir. 2002) (citations omitted) (emphasis added).  On the latter point,

> "[m]aterial evidence required to be disclosed includes evidence bearing on the credibility of government witnesses.  The need for disclosure is particularly acute where the government presents witnesses who have been granted immunity from prosecution in exchange for their testimony.  We have previously recognized that criminals who are rewarded by the government for their testimony are inherently untrustworthy, and their use triggers an obligation to disclose material information to protect the defendant from being the victim of a perfidious bargain between the state and its witness."

*Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997) (*en banc*).  More directly, the [prosecution's] responsibility includes the duty as required by *Giglio* to turn over to the defense in discovery *all* material information casting a shadow on a government witness's credibility." *Id*. quoting *United States v. Bernal-Obeso*, 989 F.2d 331, 333-34 (9th Cir. 1993) (emphasis in original).

////

3

To be blunt, this favorable evidence must be produced to defendants as a predicate to any fair trial. Even "a defendant's failure to request favorable evidence [does] not leave the Government free of all obligation." *Kyles*, 514 U.S. at 433. Rather, in *United States v. Agurs*, 427 U.S. 97 (1976), the Supreme Court:

> "distinguished three situations in which a *Brady* claim might arise: first, where the previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured; second, where the Government failed to accede to a defense for disclosure of some specific kind of exculpatory evidence; and third, where the Government failed to volunteer exculpatory evidence never requested, or requested only in a general way."

*Kyles*, 514 U.S. at 433 citing *Agurs*, 427 U.S. at 103-08 (internal citations omitted). Following *Brady* and *Agurs*,

> "[i]n the third prominent case on the way to current *Brady* law, *United States v. Bagley*, 473 U.S. 667 (1985), the [Supreme] Court disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes, and it abandoned the distinction between the second and third *Agurs* circumstances, *i.e.*, the 'specific-request' and 'general-or no-request' situations. *Bagley held that regardless of request, favorable evidence is material'"* and is required to be produced.

*Kyles*, 514 U.S. at 433 (emphasis added).

In this case, Ms. Sosa asks the Court to require the government to produce all favorable evidence government counsel possesses or the existence of which he knows about, or through the exercise of diligence, could possess or know about. And while *Bagley* disavowed the need to request specific evidence, Ms. Sosa nonetheless demands the following in addition to her general request for all *Brady* material, *i.e.*, all favorable evidence, be it exculpatory on its face or impeaching of any other evidence, including:

• All substantive exculpatory and impeachment evidence regarding evidence about or statements by (1) federal agent Jaime Martinez aka Mickey aka SA-1218-SF aka CS, (2) federal agent Bad Boy aka El Zorro aka Lil Bad Boy aka Beto aka SA-1211-SF, and (3) any other purported witness to any of the events alleged in the Second Superseding Indictment and/or any purported expert witness regarding (1) Ms. Sosa's alleged association with any persons alleged to be affiliated with MS-13, including but not limited to Maurcio Urias and each and every other defendant named in the Second Superseding Indictment; (2) Ms. Sosa's alleged participation in any alleged activities—whether alleged to be legal or illegal in nature—with any persons alleged to be affiliated with MS-13, including but not limited to Maurcio Urias, John Briez and each and every other defendant named in the Second Superseding Indictment; (3) any actions or activities by alleged members of MS-13, including but not limited to the other 30 defendants in this matter, regarding the treatment, use, misuse, abuse, or other untoward misconduct

4

towards women; (4) any and all statements by Martinez, Bad Boy and any other witness that are inconsistent with statements by other witnesses or are internally inconsistent with other statements made by the same individual to any law enforcement or prosecution personnel, including but not limited to statements made to agents of the Office of the United States Attorney for the Northern District of California ("USAO ND"), the SFPD, the DEA, the United States Department of Homeland Security ("DHS"), ICE, DOJ, INS, ATF, CHP, the RPD,  the ACPD, the RMPD, BPD, SMCSD, the Los Angeles County Coroner Forensics Lab ("LACCFL"), the CCCSD, the SCCCL, the El Salvadoran National Police, and any other Office of the United States Attorney for any other judicial district within the territorial jurisdiction of the United States ("USAO ALL")[2];

• Any and all promises, considerations, rewards, threats, and/or inducements made by any federal, state or local law enforcement agency to agent Martinez, agent Bad-Boy, and any to other person who has purported to witness any event presented in the Second Superseding Indictment, including but not limited to money, expenses, subsistence, a job, a new location, negotiation of criminal charges, and immigration benefits, whether to the purported witness him/herself or to any friend, spouse, paramour, parent, child, or other family member of the purported witness.

• All substantive exculpatory and impeachment evidence that contradicts, is inconsistent with, or mitigates in any way the statements of any other witness and/or the government's allegation the Ms. Sosa conspired to distribute methamphetamine on the dates alleged and possessed methamphetamine with the intent to distribute it on the dates alleged;

• All substantive and impeachment evidence relating to the testing of the substance(s) alleged to be methamphetamine as set forth in Counts 26 through 30 of the Second Superseding Indictment, including but not limited to (1) any errors by the testing lab or any of its personnel within the last 10 years[3] with regard to the testing of substances controlled by federal law, (2) any complaints lodged against the testing lab or any of its personnel in the last 10 years.

A.   **This Court has the authority to enforce the government's *Brady* obligations now.**

The government asserts that *Brady* issues can only be addressed after a trial resulting in a conviction.  The government underestimates this Court's ability to enforce the law.  This Court plainly has the authority to issue an Order directing the government to fulfill *Brady's* promise and to produce now all *Brady* material, or to dismiss this action if the government refuses.  *See*

---

[2]Hereafter, Ms. Sosa refers to these agencies collectively as "agencies that have participated in this joint investigation/prosecution."

[3]Ms. Sosa asks the Court to enforce the 10-year period from the date of the original Indictment in this matter, October 16, 2008.  *Compare* Fed. R. Evid. 609(b).

1   *United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008); *United States v. Blanco*, 392 F.3d 382

2   (9th Cir. 2004).

3          Worse, the government's claim suggests that *Brady's* first command—that the

4   government produce pretrial "evidence [that is] favorable to the accused, because it is either

5   exculpatory or impeachment material[,]" *Benn,* 283 F.3d at 1052–is meaningless.  Because

6   reversal for a *Brady* violation may occur only where the government withholds *Brady* material

7   *and* "there is a reasonable probability that, had the evidence been disclosed to the defense, the

8   result of the proceeding would have been different[,]" *Kyles*, 514 U.S. at 434 (citations and

9   quotation omitted), the government's Notice suggests that it need not concern itself with the first

10  prong pretrial, because its confidence in its theory of conviction will allow it to rely upon the

11  third prong post-trial, assuming of course that the defendant ultimately uncovers the withheld

12  evidence.  Any such approach is inconsistent with *Brady* and its due process guarantee at its core.

13  Indeed, the record in this case requires this Court's firm directive with respect to the

14  government's need to obtain and provide exculpatory evidence promptly and completely, from

15  all of the agencies that have participated in this joint investigation.

16  **B.     The government's *Brady* obligations depend on the government's diligence, not on
        "agency."**

17

18         The government's duty to produce *Brady* encompasses more than producing what is

19  known to the individual prosecutor.  Rather, the Supreme Court has made clear "that the

20  individual prosecutory *has a duty to learn of favorable evidence known to others acting on the*

21  *government's behalf in the case, including the police."*  Kyles, 514 U.S. at 437 (emphasis

22  added).  Put another way, "'[b]ecause the prosecution is in a unique position to obtain

23  information known to other agents of the government, *it may not be excused from disclosing*

24  *what it does not know but could have learned.'"  United States v. Blanco*, 392 F.3d 282, 388 (9th

25  Cir. 2004) quoting *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (en banc) (emphasis

26  added).  Put yet another way, "'the prosecution must disclose any [*Brady*] information within the

27  possession or control *of law enforcement personnel.'"  United States v. Monroe*, 943 F.2d 1007,

28  1011 n. 2 (9th Cir. 1991) quoting *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 824 (9th

1    Cir. 1985) (emphasis added).

2          This "duty to learn" is akin to the standard Congress adopted when determining the scope

3    of the prosecution's Rule 16 obligations. *See e.g.*, Fed. R. Crim. P. 16(a)(1)(B) (requiring

4    production of defendant's statements that "the attorney for the government knows—or through

5    due diligence could know—that the statement exists"); 16(a)(1)(D) (applying same diligence

6    standard to production of defendant's prior criminal record); 16(a)(1)(F) (applying same

7    diligence standard to production of results of examinations, scientific tests and experiments).

8          In this case, the government could exercise easily the diligence required by *Brady*.

9    Indeed, the Court need only consider that the government has sought and received an Everest of

10   purportedly inculpatory evidence from many agencies that have participated in this joint

11   federal/state investigation, as set forth above.  It would take minimal diligence to obtain from

12   these same participating agencies all *Brady* evidence (as defined above) in this case.  Indeed, Ms.

13   Sosa cannot understand any proper reasoned basis, much less a constitutional one, to permit the

14   government to shrug off its duties so cavalierly.

15         Moreover, the Department of Justice plainly recognizes the import of producing complete

16   *Brady* materials in each case.  For example, in *Blanco*, the Ninth Circuit relied upon the

17   "standard form" discovery promises by the United States Attorney's Office fo the District of

18   Nevada, which expressly extends the government *Brady* disclosure obligations "*to evidence*

19   *which is known by Government counsel or which could become known by the exercise of due*

20   *diligence.*"  *Blanco*, 392 F.3d at 388 (emphasis in original).  But the Ninth Circuit found that this

21   standard form "misstated" the government's *Brady* obligations by understating them: the *Blanco*

22   Court determined that simply "asking" for these materials is not enough and that the promise of

23   *Brady* requires government counsel to obtain *Brady* information, even from recalcitrant agencies.

24   *Id.* at 393-94.  Given the clarity of the law in this regard, it is both surprising and frightening that

25   the government seeks to avoid the constitutional command of diligence in this case.

26         Most plainly, the government's position means this: while it has obtained test results

27   from the DEA in this case, it claims that DEA does not fall within the scope of its *Brady*

28   obligations, such that if there exists at the DEA documents reflecting problems with the accuracy

7

1    of DEA testing equipment that undermine substantially the test results the DEA has reported, that

2    impeachment information need not be turned over by the government in this case. So too, if the

3    SFPD has a file showing that agent Martinez aka SA-1218-SF has been known to lie on hundreds

4    of occasions, and indeed has told SFPD officers that he will perjure himself at Ms. Sosa's trial,

5    this impeachment evidence likewise must not be produced under the government's claims.

6    *Brady*'s due process guarantee cannot be reconciled with the government's Notice in this case.

7    **C.   The government's *Brady* obligations in this case include obtaining and producing

8    exculpatory and impeachment evidence from every agency that has participated in
     this joint investigation and has provided inculpatory evidence to the government

9    with respect to this prosecution and other nationally-coordinated prosecutions of
     alleged MS-13 members and associates.**

10   As set forth above, the breadth of the government's *Brady* obligations is co-extensive

11   with the information available to it through the exercise of diligence. In this case, the

12   government has obtained purportedly inculpatory evidence from more than 15 agencies. At a

13   minimum, it must now obtain from these agencies all *Brady* material regarding this case.

14   The government's attempt to limit *Brady* to the FBI and ICE, the lead agencies working

15   on this matter, is unacceptable. Indeed, the Court need look no further than *Blanco* to see that the

16   government may not define its "agents" so restrictively as to avoid its *Brady* obligations. In

17   *Blanco*, the DEA had used an informant to set up a sting, and then prosecuted the targets of the

18   sting. Although the informant had obtained favorable treatment by the INS in relation to his

19   work for the DEA, the government never produced to the defendants any information about that

20   favorable treatment (and indeed, objected to cross-examination on this subject at trial.) 392 F.3d

21   at 392-94. Although the INS had nothing to do with that investigation or with the prosecution of

22   that case, the Ninth Circuit held that the government was required to produce the INS materials

23   to the defendant pretrial. *Id.*

24   In response, the government will likely rely on *United States v. Shryock*, 342 F.3d 948

25   (9th Cir. 2003) and *United States v. Aichele*, 941 F.2d 761 (9th Cir. 1991). These cases are

26   insufficient to defeat this motion.

27   Ms. Sosa agrees that there exists an apparent conflict between cases such as *Shryock,* on

28   the one hand, and *Kyles,* on the other. This apparent conflict stems from an imprecise handling

8

of *statutory* claims for discovery under Fed. R. Crim. P. 16 and *constitutional* claims for discovery under *Brady v. Maryland*, 373 U.S. 83 (1963).  In short, the Ninth Circuit cases that have created a federal/state barrier for *Brady* purposes have imprecisely relied on a limited Rule 16 rationale to reach their conclusions.  Once the differences between the statutory and constitutional rights to discovery are made clear, it becomes apparent that the government does have a duty to learn of any favorable evidence known to the state agencies participating in this joint investigation.[4]

In *Shryock*, the Ninth Circuit stated that the government did not have an obligation under *Brady* to turn over an alleged CDC debriefing because the CDC is a state agency and the federal prosecutor did not have access to the CDC files.  The only authority cited in *Shryock* is *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991).  In turn, the only authority cited in *Aichele* is *United States v. Gatto*, 763 F.2d 1040 (9th Cir. 1985).  As a result, it is necessary to analyze *Gatto* and *Aichele* to assess the current validity of the federal/state distinction articulated in *Shryock*.  This analysis reveals that while the Ninth Circuit has explained why such a distinction has been applied in the Rule 16 context, it has never offered a principled reason for articulating such a distinction in the *Brady* context.  Given this lack of reasoning, and given the Supreme Court's more recent *Brady* precedent, as articulated in *Kyles*, this Court should find that such a federal/state distinction does not apply to constitutional discovery.

The federal/state distinction appears to have its genesis in *Gatto*, which was a government appeal of a district court's decision to exclude evidence due to a discovery violation under Rule 16.  In other words, *Gatto* only involved a *statutory* discovery claim; it did not involve a constitutional discovery claim under *Brady*.  The Ninth Circuit reversed the district court's exclusion order, finding that there was no Rule 16 violation because the disputed items were in the possession of state, not federal, authorities.  In doing so, the Ninth Circuit observed that

---

[4]Of course, there is not state/federal barrier with respect to the other federal agencies involved in this case, like the DEA who asserts that the contraband allegedly obtained in this matter constitutes methamphetamine.  Nonetheless, and in disregard of *Blanco*, the government insists that the DEA's files must not be reviewed for *Brady* information.

1    discovery under Rule 16 only applies to items that are in the "possession, custody, or control" of

2    the "government."  *Gatto*, 763 F.2d at 1047 (quoting Fed. R. Crim. P. 16).  Given the specific

3    language used in that particular subsection of Rule 16, the Ninth Circuit concluded that the rule

4    only applied to items that were in the possession of the *federal* government.  *Id.* at 1048

5    ("Because we find no due diligence language in rule 16(a)(1)(C) at all, nor any special reason to

6    deviate from its plain language, we conclude that it triggers the government's disclosure

7    obligation only with respect to documents within the federal government's actual possession,

8    custody, or control.").  It is overwhelmingly clear that *Gatto* was a Rule 16 case, not a *Brady*

9    case.[5]  Moreover, other portions of Rule 16 do impose a diligence requirement, reflecting the

10   Congressional command of diligence upon federal prosecutors.  *See* Fed. R. Crim. P. 16(a)(1)(B),

11   16(a)(1)(D), 16(a)(1)(F).

12        Six years after *Gatto*, and four years before *Kyles*, the Ninth Circuit decided *Aichele*.  In

13   *Aichele*, the defendant sought impeachment material, which is the equivalent of *Brady* material,

14   *see Giglio v. United States*, 405 U.S. 150 (1972); *see also Kyles*, 514 U.S. at 433, that was in a

15   witness's CDC file.  In a one-sentence explanation, the Ninth Circuit held that the defendant was

16   not entitled to the information, apparently because it was under the control of state authorities.

17   *See Aichele*, 941 F.2d at 764 ("The prosecution is under no obligation to turn over materials not

18   under its control.").  As stated previously, the only authority cited in *Aichele* was *Gatto*.  There

19   was no explanation as to how *Gatto*, a 2-1 opinion narrowly holding that Rule 16 only applies to

20   material in the federal government's possession, could be extended to claims for discovery under

21   *Brady*.  Indeed, it seems odd that *Aichele* would rely on precedent interpreting Rule 16, which is

22   primarily designed as a vehicle for the disclosure of *inculpatory* evidence, in determining what is

23   required under *Brady*, which stems from the due process requirement of a fair trial through the

24

25

        _____

26        [5]Interestingly, Judge Schroeder dissented, explaining that there was a Rule 16 violation
     because the documents in question were the product of a joint investigation, which included an
27   FBI agent who acted as a liaison between the state authorities and federal prosecutors.  *See Gatto*,
     763 F.2d at 1051.
28

1    disclosure of *exculpatory* evidence.[6]

2    To the extent that *Aichele*'s unexplained decision to conflate Rule 16 discovery with

3    *Brady* discovery was ever good law, it has been overruled by the Supreme Court's decision four

4    years later in *Kyles*.  In *Kyles*, the Supreme Court explained that an "individual prosecutor has a

5    duty to learn of any favorable evidence known to the others acting on the government's behalf in

6    the case, including the police."  *Kyles*, 514 U.S. at 437.  The Supreme Court further emphasized

7    that: "[N]o one doubts that police investigators sometimes fail to inform a prosecutor of all they

8    know.  But neither is there any serious doubt that 'procedures and regulations can be established

9    to carry the prosecutor's burden and to insure communication of all relevant information on each

10    case to every lawyer who deals with it.'"  *Id.* at 438; *see Giglio*, 405 U.S. at 154 (recognizing that

11    *Brady* places a burden on "large prosecution offices" but emphasizing that procedures and

12    regulations can be implemented to respond to this burden).  In *Kyles*, the Supreme Court

13    concluded that "any argument for excusing a prosecutor from disclosing what he does not happen

14    to know about boils down to a plea to substitute the police for the prosecutor, and even for the

15    courts themselves, as the final arbiters of the government's obligation to ensure *fair trials*."

16    *Kyles*, 514 U.S. at 438 (emphasis added).

17    Thus, in holding that a prosecutor has a duty to learn of favorable evidence, *Kyles* makes

18    two things clear.  First, it is understood that in large, complex cases, such as this one, *Brady*

19    places a significant burden on the prosecution.  Be that as it may, the Supreme Court emphasized

20    that various "procedures and regulations" can be instituted to alleviate that burden.  Second, the

21    principle animating *Kyles*, and *Brady* for that matter, is that the government has an obligation

22    under the Due Process Clause to ensure that a defendant receives a fair trial.  In other words, the

23    government is not supposed to be simply in the business of winning a case; instead, it has a

24

25    ─────────────────

26    [6]The Ninth Circuit also noted that when a defendant "has enough information to be able
    to ascertain the supposed *Brady* material on his own, there is no suppression by the government."
27    *Aichele*, 941 F.2d at 764.  The Ninth Circuit has characterized this statement as dicta and has
    suggested that it has been overruled by *Kyles* and its own precedent.  *See Benn v. Lambert*, 283
28    F.3d 1040, 1061-62 (9th Cir. 2002).

1 special duty to ensure the search for truth and a fair trial.

2      These two principles have been emphasized in both the Supreme Court and Ninth Circuit

3 cases explaining the *Kyles* rule. For example, the Supreme Court has explained that the rule in

4 *Kyles* "illustrate[s] the special role played by the American prosecutor in the search for truth in

5 criminal trials. Within the federal system, for example, we have said that the United States

6 Attorney is 'the representative not of an ordinary party to a controversy, but of a sovereignty

7 whose obligation to govern impartiality is as compelling as its obligation to govern at all; and

8 whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice

9 shall be done." *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Berger v. United States*,

10 295 U.S. 78, 88 (1935)). Likewise, in articulating the *Kyles* rule, the Ninth Circuit has stated:

11 "Because the prosecution is in a unique position to obtain information known to other agents of

12 the government, it may not be excused from disclosing what it does not know but could have

13 learned. The disclosure obligation exists, after all, not to police the good faith of prosecutors, but

14 to ensure the accuracy and fairness of trials by requiring the adversarial testing of all available

15 evidence bearing on guilt or innocence." *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997)

16 (*en banc*) (citations omitted).[7]

17      Given the principles animating the *Kyles* rule, it is clear how it should be applied in this

18 context. The fact that documents may be in the possession of state agencies does not magically

19 insulate them from the *Brady/Kyles* rule. Although it may be burdensome for the government to

20 review those documents to determine whether exculpatory material exists, that is a burden that it

21 must shoulder under *Kyles*.[8] Furthermore, to the extent that the federal/state divide makes it

22 difficult for such review to take place, there are "procedures and regulations" that can be

23 instituted to allow this review to be expedited. Also, to the extent that the state does not comply

24 _____

25     [7]Judge Schroeder authored the *en banc* opinion in *Carriger*. As mentioned earlier, she
26 dissented in *Gatto*.

27     [8]Of course, the government can alleviate itself of much of this burden by simply
disclosing all of the requested documents to Ms. Sosa and her co-defendants, and allowing them
28 to conduct their own review.

1    with informal requests by the government to undertake its *Brady* obligations, a subpoena duces

2    tecum certainly be issued to those agencies, compliance with which would permit government

3    counsel and/or Ms. Sosa to undertake a *Brady* review.

4          Indeed, constructing an arbitrary federal/state barrier frustrates the guiding principle

5    underlying *Kyles* and *Brady*, that the government ensure that a defendant receive a fair trial.  For

6    example, suppose a situation, such as this case, where defense counsel has put a federal

7    prosecutor on notice that a wealth of exculpatory material may exist in certain files in the

8    possession of state agencies that have participated in this investigation and prosecution.  Under

9    the government's interpretation of *Kyles*, it has no obligation to seek out and review that material

10   for the sole reason that it is in the possession of state authorities, regardless of the joint efforts

11   that have occurred to date.  This is the government's position, even though a review of that

12   material may very well disclose exculpatory evidence that would ensure that the defendant

13   receives a fair trial.  This claim cannot be reconciled with the very foundational principle upon

14   which *Kyles* is based – that the government ensure that a defendant receive a fair trial.

15         Finally, any doubt must be resolved for broad enforcement of *Brady* in this case given the

16   *joint nature* of this prosecution, and the investigation that led to it.  This is not the case where a

17   federal entity is being asked to uncover materials from state agencies with whom it has no

18   relation in this case.  Rather, since its inception, this case has been a joint state and federal effort.

19   And while the Ninth Circuit has never addressed squarely the scope of the prosecution's *Brady*

20   obligations in a joint state-federal investigation, our sister circuits have, and their conclusions

21   support this motion.

22         In *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979), the Fifth Circuit considered

23   whether the knowledge of state investigative agents should be imputed to federal prosecutors

24   where there was a joint investigative task force composed of FBI agents and state agents.  603

25   F.2d at 568-69.  The Court rejected the government's argument against imputation, finding that

26   "[i]mposing a rigid distinction between federal and state agencies which have cooperated

27   intimately from the outset of an investigation would artificially contort the determination of what

28   is mandated by due process." *Id*. at 570.  Adopting a case-by-case as opposed the a per-se

13

1    approach, the Court determined that this cooperation, which it described as "extensive[,]" the

2    required a finding that the state investigators "functioned as agents of the federal government

3    under the principles of agency law" and "were in a real sense members of the prosecution team."

4    *Id*. at 570.  The Court thus found imputation appropriate in that joint investigation.  Those

5    circumstances pertain in this matter and require an application of *Brady* far broader than the

6    prosecution will undertake voluntarily.

7          Similarly, the Third Circuit also has held that "evidence possessed by state agents may be

8    constructively possessed by a federal prosecutor such that *the prosecutor has a duty to obtain*

9    *that evidence and disclose it to the defense*."  *United States v. Reyeros*, 573 F.3d 270, 281 (3d

10   Cir.  2008) citing *United States v. Risha*, 445 F.3d 298, 303-06 (3d Cir. 2006) (emphasis added).

11   The Third Circuit views this issue of *Brady*'s scope as one of "cross-jurisdiction constructive

12   knowledge," one which must assess what the prosecutor knows or should know, even where the

13   facts are developed in another case.  *Risha*, 445 F.3d at 303 quoting *United States v. Joseph*, 996

14   F.3d 36, 39 (3d Cir. 1993).  As explained by that Court, these circumstances require an

15   evaluation of (1) whether the party with knowledge of the information *is acting on the*

16   *government's behalf* or is under its control; (2) the extent to which state and federal governments

17   are part of a team, are participating in a joint investigation or are sharing resources, and (3)

18   whether the entity charged with constructive possession has ready access to the evidence. *Id*.

19   (internal quotations omitted).  The joint nature of this state-federal investigation meets the

20   standard of constructive possession set forth by the Third Circuit.

21         Most plainly, the federal agents in this case have worked hand-in-glove for years with

22   state agencies to investigate this case and bring this prosecution.  The prosecution has gathered

23   and threatens to use at trial the fruits of that investigation: a raft of purportedly inculpatory

24   evidence.  Fundamental fairness requires that the prosecution provide the exculpatory evidence

25   that was obtained in this same joint investigation.  To permit otherwise is to bless a trial deprived

26   of the basic fairness guarantee: that the defendant has received all favorable evidence that could

27   undermine the government's allegations.  Such a trial, by definition, is not worthy of confidence

28   and should not be permitted.

14

### IV.  Conclusion

This is a critical motion in a case with incredibly high stakes.  The government contends that Ms. Sosa faces a minimum of 10 years incarceration if convicted.  Most of her co-defendants face potential sentences of life in prison.  One is trying to convince the government not to execute him.

But when faced with a basic request grounded in nearly a half-century of settled Supreme Court authority requiring as an element of any fair trial the complete and full production of all evidence favorable to a defendant, be it exculpatory or impeachment evidence, the government has balked, telling this Court it is powerless to address the issue, and then adopting a cramped reading of *Brady* that divests the prosecution of any real responsibility to meet its commands. The fact that the government has and will continue to rely on the DEA and SFPD to try to prove its case against Ms. Sosa, and then in the next breath tells this Court and Ms. Sosa that the favorable and impeachment evidence in those agencies' custody and control does not constitute *Brady* material, should end the debate.  That the government nonetheless proclaims its fidelity to *Brady* in these circumstances demonstrates the opposite, and reflects an executive more focused on winning than in doing justice.

For all of these reasons, as set forth above, Ms. Sosa and the moving defendants listed on the Motion respectfully ask this Court to Order compliance with *Brady*, and to do so with a detailed ruling that leaves no room for ambiguity or doubt.  On this record, the Court's strong voice is required to assure a fair trial on these most serious of charges.

Respectfully submitted,

COLEMAN & BALOGH LLP

DATED: May 12, 2009

By: ETHAN A. BALOGH
225 Bush Street, Suite 1600
San Francisco, CA 94104
Direct: (415) 439-8347

Attorneys for Defendant
JUDITH SOSA

15

# TABLE OF CONTENTS

I. Introduction..................................................................................................................1

II. Facts..........................................................................................................................1

III. Argument..................................................................................................................3

A.    This Court has the authority to enforce the government's *Brady* obligations now............5

B.    The government's *Brady* obligations depend on the government's diligence, not on "agency."...................................................................................................................6

C.    The government's *Brady* obligations in this case include obtaining and producing exculpatory and impeachment evidence from every agency that has participated in this joint investigation and has provided inculpatory evidence to the government with respect to this prosecution and other nationally-coordinated prosecutions of alleged MS-13 members and associates...........................................................................................8

IV.  Conclusion..............................................................................................................15

i

1

**TABLE OF AUTHORITIES**

2

**CASES:**

3  *Benn v. Lambert*, 283 F.3d 1040 (9th Cir. 2002)...................................................................3, 6, 11

4  *Berger v. United States*, 295 U.S. 78 (1935)..................................................................................12

5  *Brady v. Maryland*, 373 U.S. 83 (1963).................................................................................*passim*

6  *Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997) (*en banc*)............................................3, 6, 12

7  *Giglio v. United States*, 405 U.S. 150 (1972)....................................................................3, 10, 11

8  *Kyles v. Whitley*, 514 U.S. 419 (1995)....................................................................................*passim*

9  *Strickler v. Greene*, 527 U.S. 263 (1999)......................................................................................12

10  *United States v. Aichele*, 941 F.2d 761 (9th Cir. 1991)........................................................*passim*

11  *United States v. Agurs*, 427 U.S. 97 (1976)......................................................................................4

12  *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979).......................................................13, 14

13  *United States v. Bagley*, 473 U.S. 667 (1985).................................................................................4

14  *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993).......................................................3

15  *United States v. Blanco*, 392 F.3d 382 (9th Cir. 2004).........................................................*passim*

16  *United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008)...........................................................6

17  *United States v. Gatto*, 763 F.2d 1040 (9th Cir. 1985)....................................................9, 10, 12

18  *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817 (9th Cir. 1985)...........................................6

19  *United States v. Joseph*, 996 F.3d 36 (3d Cir. 1993).................................................................. 14

20  *United States v. Monroe*, 943 F.2d 1007 (9th Cir. 1991)...............................................................6

21  *United States v. Reyeros*, 573 F.3d 270 (3d Cir.  2008)................................................................14

22  *United States v. Risha*, 445 F.3d 298 (3d Cir. 2006)....................................................................14

23  *United States v. Shryock*, 342 F.3d 948 (9th Cir. 2003)............................................................8, 9

24

25

**STATUTES:**

26  Fed. R. Crim. P. 16.......................................................................................................*passim*

27

28

ii