CHRISTOPHER J. CANNON, State Bar No. 88034
Sugarman & Cannon
44 Montgomery Street, Suite 2080
San Francisco, CA 94104-6702
Telephone: 415/362-6252
Facsimile: 415/677-9445

Attorney for Defendant IVAN CERNA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 08-0730 WHA |
| | ) | |
| Plaintiff, | ) | **SUPPLEMENTAL REQUEST** |
| | ) | **FOR BILL OF** |
| v. | ) | **PARTICULARS** |
| | ) | |
| IVAN CERNA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

Other defendants in this case have filed requests for Bills of Particulars. Through counsel, Ivan Cerna joins those requests, incorporates them by reference, and asks the Court to grant these specific requests relevant to his defense.

The Indictment argues that:

> MS-13 is a national and international criminal organization with over 10,000 members regularly conducting gang activities in at least twenty states and the District of Columbia, as well as in Mexico, Honduras, Guatemala, and El Salvador. MS-13 is one of the largest street gangs in the United States. Gang members actively recruit members,

> including juveniles, from communities with a large number of immigrants from El Salvador. Members, however, can also have ethnic heritage from other Central American countries. In the United States, MS-13 has been functioning since at least the 1980s.
>
> At all times relevant to this Indictment, MS-13 members attended gang meetings on a regular basis. Leaders of MS-13 cliques from across California periodically met to discuss gang rules and gang business, to resolve problems or issues involving the cliques, and to unite gang members. In San Francisco, members met to discuss, plan, and report on, among other things: gang organizational issues; illegal activity conducted on behalf of MS-13; acts of violence committed by MS-13 members against rival gang members and others; law enforcement activity against MS-13 members.

Indictment ¶ 3.

Paragraph 15 of the Indictment describes Ivan Cerna as:

> one of the more senior members of MS-13 in the San Francisco Bay Area. CERNA has been a member of MS-13's 20th Street clique since its inception. For a number of years, CERNA held the leadership of 20th Street. While the leader of 20th Street, CERNA, among other things, led meetings and directed MS-13 members to do "work," that is, to attack and kill actual and suspected *Nortenos,* as well as actual and suspected members of other gangs. CERNA also counseled MS-13 gang members to distribute narcotics and to identify and retaliate against individuals who were suspected of cooperating with law enforcement. CERNA stepped down from his leadership position when some members of MS-13 expressed dissatisfaction with his leadership of the gang, and CERNA assumed a lower profile within the gang when he learned that he had attracted the attention of law enforcement officers. Even so, CERNA remained in contact with members of the gang and continues to have a prominent role in the conduct of MS-13.

Other parts of the Indictment (see paragraphs 15, 16 and 17) describe what the government contends were two separate leadership groups that followed Ivan Cerna's

departure from an alleged leadership role.  The Indictment fails to mention, as established by the record of the bail hearing in this case, that Cerna had moved away from San Francisco, was employed more than full time, ran a soccer team[1] and had been warned by members of the gang task force that there was a contract out on him.

These latter facts are fully consistent with a withdrawal from any illegal RICO conspiracy, and, under Brady, the government should be forced to disclose any facts in support of such a defense.  In this request for a Bill of Particulars, however, we are seeking the details of the specific actions that Ivan Cerna is accused of participating in, so that we do not have to defend against unknown and unspecified allegations at trial.

**SPECIFIC REQUESTS**

In the manner and means section of the Indictment, the government alleges at paragraph 22 that: "It was part of the manner and means of the conspiracy that the defendants, as gang members of MS-13, were required to have and did have regular meetings with other MS-13 gang members to discuss, among other things: the structure and organization of the gang."  In order to defend against this allegation, the defense is entitled to know the journalistic details of these meetings – the who, what, when, where and why.  Ivan Cerna attended many meetings, for his soccer team, for work, with his family, and at churches.  We assume the government does not contend that the vast majority of these meeting are criminal.  In order to rationally defend against the charges here, we are entitled to know which of these meetings the government contends were devoted to the structure

---

[1] Many MS-13 members, including one of the informants in this case, Micky, played on the team.

and organization of the alleged gang. The indictment does provide limited detail regarding some of these alleged meetings. We are simply requesting similar detail, specifying the time, place, participants and subject of discussion be provided for <u>all</u> of the "gang meetings" that the government will attempt to prove at trial.

## SPECIFIC REQUESTS REGARDING OVERT ACTS ALLEGED IN PARAGRAPH 26

In the listing of the overt acts at paragraph 26, the government provides some detail about eight meetings, but that detail is limited.

The government alleges that:

(One) "On or about August 1, 2005, in San Francisco, California, IVAN CERNA, a/k/a 'Tigre,' MARVIN CARCAMO, a/k/a 'Cyco,' 'Psycho,' a/k/a 'Syco,' and others known and unknown, held a meeting to discuss MS-13 gang business." Indictment ¶ 26(1). There is no reason not to specify the other known attendees and the location of the meeting. In fact, those known attendees are presumptively exculpatory witnesses whose identity the government must disclose. See <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

(Two) "On or about August 13, 2005, in San Francisco, California, IVAN CERNA, a/k/a 'Tigre,' led a meeting of MS-13 gang members at which MS-13 gang business was discussed, including the MS-13 rule requiring the killing of those who cooperate with law enforcement." Indictment ¶ 26(3). As with the August 1, 2005 meeting, we request the government provide the location and identities of all participants in this alleged meeting.

(Three) "On or about August 15, 2005, IVAN CERNA, a/k/a 'Tigre,' authorized the sale of a firearm by an MS-13 member."  Indictment ¶ 26(4).  Again we request notice of the participants and witnesses to this alleged authorization as well as the location of the alleged meeting and a description of the alleged firearm.

(Four) "In or about early April 2006, IVAN CERNA, a/k/a 'Tigre,' approved the purchase of a firearm."  Indictment ¶ 26(15).  Again we request notice of the participants and witnesses to this alleged approval as well as the location of the alleged meeting and a description of the alleged firearm.

(Five) "On or about April 21, 2006, in San Francisco, California, IVAN CERNA, a/k/a 'Tigre,' discussed a variety of MS-13 gang business, including the necessity for the gang's members to arm themselves, the difficulty of 'taxing' other gangs, and his disillusionment with most of the gang's leaders in El Salvador."  Indictment ¶ 26(17).  Again we request notice of the participants and witnesses to this alleged discussion as well as the location of the alleged discussion.

(Six) "On or about April 21, 2006, in San Francisco, California, IVAN CERNA, a/k/a 'Tigre,' and others known and unknown, met with members of another gang and advised them, among other things, that they and MS-13 needed to support each other."  Indictment ¶ 26(18).  Again we request notice of the participants and witnesses to this alleged meeting as well as the location of the alleged meeting.

(Seven) The Indictment alleges another meeting, on or about August 22, 2007, in San Francisco, California, where IVAN CERNA, a/k/a "Tigre," WALTER PALMA, a/k/a "Kapone," a/k/a "Capon," ABRAHAM MARTINEZ, a/k/a "Goofy," JOSE ALVARADO,

a/k/a "Joker," and others known and unknown, attended a gang meeting during which they discussed, among other things, the collection of gang dues from members, dissension within the gang, gang rules, and the enforcement of discipline within the gang.  Indictment ¶ 26(37).  Again we request notice of the participants and witnesses to this alleged discussion as well as the location of the alleged discussion.

(Eight) The Indictment describes another meeting on "or about August 26, 2007, in San Francisco, California: ANGEL NOEL GUEVARA, a/k/a 'Peloncito,' MORIS FLORES, a/k/a 'Slow,' a/k/a 'Slow Pain,' WALTER PALMA, a/k/a 'Kapone,' a/k/a 'Capon,' JOSE ALVARADO, a/k/a 'Joker,' and others known and unknown, attended a gang meeting during which they discussed, among other things, problems among MS-13 cliques in the Los Angeles, California area, consulting with leaders in El Salvador about gang business, other gangs' resistance to paying MS-13's 'tax,' and obtaining money to purchase firearms through the sale of narcotics."  Indictment ¶ 26(38).  Again we request notice of the participants and witnesses to this alleged discussion as well as the location of the alleged discussion.

In response to all of these requests, the government's standard response that the discovery will contain the names of the participants is insufficient, because that discovery often does not identify all the participants in a particular meeting and the tape recordings and transcripts, which are not yet fully translated, often do not list the full names and identities of all the individuals present at a particular meeting.

/ /

/ /

SUPPLEMENTAL REQUEST FOR BILL OF PARTICULARS
No. CR 08-0730 WHA                                                                                                                    6

## SPECIFIC REQUESTS REGARDING CONSPIRACIES ALLEGED IN COUNTS TWO, THREE AND FOUR

The conspiracy to murder charge in Count Two is particularly vague, alleging only that the defendants "agree together and with each other to kill actual and suspected *Nortenos,* actual and suspected members of other gangs, and individuals suspected of cooperating with law enforcement, in order to maintain and increase their standing within the racketeering enterprise known as MS-13." Indictment ¶ 30. The Indictment fails to specify any particular date of agreement or even a particular victim. This allegation is so overbroad that the government could claim that Ivan Cerna is guilty as a result of an alleged agreement to kill him(self). In order to defend against a charge of conspiracy to commit murder, particularly in this case when the government alleges that Ivan Cerna was on the outs with other members of the alleged conspiracy, it is vital to know the names of the alleged victims and the times of the alleged agreements.

The conspiracy to commit assault as charged in paragraph 31 is just as vague; in fact, it parrots the language of Count Two, merely substituting the language, "to attack with firearms, knives, and other dangerous weapons," for the words, "to kill," in Count Two. Again, in order to defend against a charge of conspiracy to commit assault, particularly in this case when the government alleges that Ivan Cerna was on the outs with other members of the alleged conspiracy, it is vital to know the names of the alleged victims and the times of the alleged agreements.

The possession of firearms charge in Count Four does not even describe a particular firearm or give a particular date. Instead it just alleges that Ivan Cerna and 20 other men,

"[b]eginning on a date unknown to the Grand Jury but since at least the late 1990s, and continuing up through and including the present" (Indictment ¶ 33), "together with others known and unknown, unlawfully, willfully, and knowingly did use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States." In order to rationally prepare a defense, Ivan Cerna's counsel must know what firearm was allegedly carried, by whom, on what day, and who was a witness to that firearm possession.

### REQUEST FOR CLARIFICATION REGARDING COUNTS FIVE THROUGH FIFTY-SIX

We assume Ivan Cerna is not charged in the allegations against specific defendants in Counts Five through Fifty-Six not related to Ivan Cerna, but given the unbounded and vague nature of the rest of the Indictment, would like confirmation of this belief.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## CONCLUSION

A defendant has a basic due process right to notice of the charges against him. Notice to be prepared for anything is insufficient to prepare a defense. This Indictment lacks sufficient specificity to insure that the specific crimes charged in each count by the grand jury will be the same specific crimes presented to the petit jury. Accordingly, Ivan Cerna requests that this Indictment be dismissed for a failure to adequately specify and provide notice of the crimes charged as to each particular count, or in the alternative, and without waiving any claims under the Fifth and Sixth Amendments, requests this Court grant a Bill of Particulars directing the government to provide the details requested regarding the alleged meetings, murders, assaults and weapon possessions alleged in this Indictment.

DATED: July 7, 2009                           Respectfully submitted,

                                              /s/Christopher J. Cannon
                                              Christopher J. Cannon
                                              Attorney for Ivan Cerna