```
1              PAGES 1  -  24

2                     UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4                 BEFORE THE HONORABLE WILLIAM ALSUP

5   UNITED STATES OF AMERICA,          )
                                       )
6                   PLAINTIFF,         )
                                       )
7    VS.                               )  NO. CR 08-730 WHA
                                       )
8   GUILLERMO HERRERA,                 )
                                       )  SAN FRANCISCO, CALIFORNIA
9                   DEFENDANT.         )  THURSDAY
                                       )  JULY 30, 2009
10  _____)  2:00 O'CLOCK P.M.
```

11                  **TRANSCRIPT OF PROCEEDINGS**

12  **APPEARANCES:**

13  **FOR SUBPOENA RESPONDENT SFPD:**  RONNIE M. WAGNER
                                         SFPD LEGAL DIVISION
14                                       ATTORNEY
                                       SAN FRANCISCO POLICE DEPARTMENT
15                                       850 BRYANT STREET
                                       **SAN FRANCISCO, CALIFORNIA 94103**

16

17

18  **FOR DEFENDANT:**           MARTIN SABELLI, ESQUIRE
                                 149 NATOMA STREET,  3RD FLOOR
                                 SAN FRANCISCO, CALIFORNIA 94103

19

20  *REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*
                    *OFFICIAL REPORTER - US DISTRICT COURT*
21                  *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

22

23

24

25

PROCEEDINGS

JULY 30, 2009                    2:00 O'CLOCK P.M.

THE COURT:  GOOD AFTERNOON.

MR. SABELLI:  GOOD AFTERNOON.

THE CLERK:  I'VE GOT TO SWEAR IN THE INTERPRETER.

THE COURT:  FINE.  SWEAR HER IN, BUT HAVE WE GOT

EVERYBODY HERE WHO IS GOING TO BE HERE?

THE CLERK:  YES.

THE COURT:  WHERE'S MS. WAGNER?

MS. WAGNER:  I'M HERE, YOUR HONOR.

HELLO, MS. WAGNER.  ALL RIGHT.  WHAT DEFENDANTS DO WE

NEED FOR THIS?

MR. SABELLI:  YOUR HONOR, MR. HERRERA, I THINK, IS

THE ONLY PERSON.

THE COURT:  ALL RIGHT.  BRING HIM IN.

MR. SABELLI:  YOUR HONOR, FOR THE INTERPRETER'S

COMFORT I THINK THEY WOULD PREFER TO SIT WITH MR. HERRERA, IF

THAT'S ACCEPTABLE TO THE COURT.

THE COURT:  WE GOT TO SWEAR THEM, THOUGH.

MR. SABELLI:  YES.

THE CLERK:  OKAY.  CALLING CRIMINAL NUMBER CR08-730,

UNITED STATES VERSUS GUILLERMO HERRERA.

COUNSEL, PLEASE STATE YOUR APPEARANCES.

MS. WAGNER:  RONNIE WAGNER FOR THE SAN FRANCISCO

POLICE DEPARTMENT.

1          **THE COURT:**  WELCOME.

2          **MR. SABELLI:**  GOOD AFTERNOON, YOUR HONOR.  MARTIN

3     SABELLI FOR MR. HERRERA, WHO IS NOT YET IN THE COURTROOM.

4          **INTERPRETER BASKER:**  MELINDA BASKER, SPANISH

5     INTERPRETER. I HAVE BEEN SWORN IN THIS CASE.

6          AND?

7          **INTERPRETER MARTINEZ:**   AND VICTOR MARTINEZ.  I HAVE

8     NOT BEEN SWORN.

9          **THE COURT:**  GO AHEAD, DAWN.

10         **THE CLERK:**  OKAY, JUDGE.

11         (THEREUPON, INTERPRETER MARTINEZ WAS SWORN.)

12         **MR. SABELLI:**  YOUR HONOR, MR. HERRERA IS NOW IN THE

13    COURTROOM.

14         **THE COURT:**  MR. HERRERA, WELCOME BACK.

15         ALL RIGHT.  WE'RE HERE ON A MOTION TO QUASH A

16    SUBPOENA. THE SUBPOENA WAS SERVED BY MR. SABELLI ON THE SAN

17    FRANCISCO POLICE DEPARTMENT. MS. RONNIE WAGNER IS HERE

18    REPRESENTING THE POLICE DEPARTMENT.  SHE MADE A MOTION TO QUASH.

19         PARTIES MET AND CONFERRED AND SUPPLIED ME WITH THIS

20    RECENT REPORT, WHICH I JUST GOT A FEW MINUTES AGO, AND I'VE READ

21    MOST OF IT.

22         SO I GUESS WE JUST GET RIGHT INTO IT UNLESS THERE'S A

23    PRELIMINARY STATEMENT OF SOME SORT.

24         **MR. SABELLI:**  I DON'T THINK THERE IS, YOUR HONOR,

25    EXCEPT TO SAY THAT MS. WAGNER AND I HAVE BE TRYING TO COOPERATE

1   AS MUCH AS POSSIBLE.  THAT'S WHY IT WAS FILED LAST NIGHT RATHER

2   THAN EARLIER.  IT'S A LENGTHY SUBPOENA.  WE'VE TRIED TO GO

3   THROUGH EVERY ENTRY AND TRIED TO REACH AGREEMENT ON IT.

4           SO THAT IS THE STATE OF THE NEGOTIATIONS AT THIS

5   POINT, YOUR HONOR.

6           **THE COURT:**  OKAY. ANYTHING YOU WOULD LIKE TO SAY,

7   MS. WAGNER?

8           **MS. WAGNER:**  JUST THAT, YOUR HONOR, HAVING READ YOUR

9   EARLIER RULINGS IN CONNECTION WITH THIS CASE --

10          **INTERPRETER BASKER:**  COULD THE INTERPRETER REQUEST

11  THAT THE COUNSEL SPEAK INTO THE MICROPHONE?

12          **THE COURT:**  I GUESS YOU NEED TO SPEAK A LITTLE

13  LOUDER.

14          **INTERPRETER BASKER:**  THANK YOU.

15          **MS. WAGNER:**   IN LIGHT OF YOUR HONOR'S PREVIOUS

16  RULINGS IN CONNECTION WITH THIS MATTER, THE DEPARTMENT'S AWARE

17  AND AGREES THAT IT'S REASONABLE TO EXPECT A MORE NARROWLY-DRAWN

18  SUBPOENA WHERE SPECIFIC DOCUMENTS ARE REFERENCED RATHER THAN

19  ATTEMPTING TO ENLIST THE POLICE DEPARTMENT'S RESOURCES IN

20  CONDUCTING WHAT REALLY, WE BELIEVE, IS A FISHING EXPEDITION AND

21  WOULD BE UNWIELDILY AND ONEROUS FOR US.

22          SO IT'S TRUE THAT WE HAVE MET AND CONFERRED AT SOME

23  SIGNIFICANT LENGTH IN AN EFFORT TO AGREE ON CERTAIN ITEMS, BUT

24  IT WOULD REMAIN THE DEPARTMENT'S POSITION THAT ABSENT A COURT

25  ORDER IT'S NOT COMPLETELY TRUE THAT WE AGREE TO ANY PARTICULAR

1   PRODUCTION AT THIS JUNCTURE.

2            THE COURT:  ALL RIGHT.  I'M JUST GOING TO GO THROUGH

3   THESE ITEMS ONE AT A TIME.  AND I'M LOOKING NOW AT THE SUBPOENA

4   ITSELF.

5            I ALSO HAVE IN FRONT OF ME, THOUGH, YOUR JOINT REPORT

6   SO THAT I CAN KIND OF CROSS-REFERENCE.  ITEM NUMBER ONE:

7                 "THE RECORDS OF ALLEGED CRIMINAL OFFENSES AND

8                 GANG ACTIVITY INVOLVING DEFENDANT GUILLERMO HERRERA."

9            ALL RIGHT.  LOOKS LIKE YOU'RE WILLING TO PRODUCE

10  THAT; IS THAT CORRECT, MS. WAGNER?

11           MS. WAGNER:  YOUR HONOR, ASSUMING UNDER REDACTIONS

12  WOULD BE UNDERTAKEN AND WE WOULD STILL BE REQUESTING IN CAMERA

13  REVIEW IN CONNECTION WITH THOSE, AS WELL AS A PROTECTIVE ORDER.

14           THE COURT:  WELL, WHAT IS THE PURPOSE OF ALL THAT?

15           MS. WAGNER:  IT WAS SIMILAR TO THE OTHER MATTER WHERE

16  THERE WERE DISPUTES RELATIVE TO THE REDACTIONS, AND SO WE

17  WOULD -- I'M PREPARED TO IDENTIFY THOSE BY MEETING AND

18  CONFERRING WITH PERSONNEL FROM THE SAN FRANCISCO POLICE

19  DEPARTMENT GANG TASK FORCE AND BE ABLE TO SUPPLY THE COURT WITH

20  A FACTUAL PROFFER WHY THERE SHOULD BE SUCH A REDACTION, AND THEN

21  SUBMIT TO THE COURT'S RULING.

22           THE COURT:  ALL RIGHT.  ALL RIGHT.  WHEN CAN YOU GIVE

23  ME THAT AS A DEADLINE?

24           MS. WAGNER:  I'M SORRY.  I DIDN'T HEAR THAT.

25           THE COURT:  I NEED THE DATE.  HOW ABOUT NEXT WEEK?

1          **MS. WAGNER:**  YES, YOUR HONOR.

2          **THE COURT:**  ALL RIGHT.  END OF NEXT WEEK.  FRIDAY THE

3    7TH.

4          OKAY. NUMBER TWO:

5              "RECORDS OF ALLEGED RICO ENTERPRISE MS13."

6          **MR. SABELLI:**  AND, YOUR HONOR, I'M SORRY.  ON THAT

7    FIRST POINT -- I'M SORRY TO INTERRUPT -- MS. WAGNER ASKED FOR A

8    PROTECTIVE ORDER.  I WOULD JUST LIKE TO UNDERSTAND WHAT THAT IS,

9    WHAT MRS. WAGNER UNDERSTANDS IT TO BE AND WHAT THE COURT WOULD

10   UNDERSTAND IT TO BE.

11         **THE COURT:**  WELL, I DON'T KNOW.  HOW CAN I UNDERSTAND

12   WHAT IT IS UNTIL I SEE THE SENSITIVITY OF THE MATERIAL?  BUT I

13   THINK WHAT YOU SHOULD DO IN YOUR SUBMISSION TO ME IS HAVE A

14   SEPARATE STATEMENT OR AFFIDAVIT SAYING:

15             "PLEASE PAY ATTENTION TO THE MATERIALS THAT ARE

16             TAGGED WITH A" -- YOU NAME IT -- "A BLUE TAG," AND

17   SAY:

18             "THESE ARE VERY SENSITIVE AND SHOULD NOT SEE THE

19             LIGHT OF DAY EXCEPT FOR COUNSEL'S EYES ONLY."

20         AND I'LL LOOK AT IT AND SEE IF I AGREE.

21         NOW, WITH RESPECT TO PROTECTING WITNESSES, I'M OKAY

22   WITH THAT.  I THINK YOU SHOULD REDACT CIVILIAN WITNESSES TO ANY

23   CRIMES. I AGREE WITH THAT.

24         BUT YOU SHOULD GIVE ME A COPY OF WHAT IS NOT YET

25   REDACTED SO THAT I CAN COMPARE AND MAKE SURE.  YOU KNOW, WHEN

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

1    THIS HAPPENED BEFORE THERE WERE ALL KINDS OF THINGS THAT WERE

2    REDACTED.  THERE WERE BOGUS REDACTIONS.  NOT BY YOU, BUT IN THE

3    OTHER CASE.

4              I WOULDN'T SAY "ALL KINDS," BUT, YOU KNOW, 15 PERCENT

5    OF THEM SHOULD NOT HAVE BEEN REDACTED.

6              SO I NEED -- AND YOU GOT TO GIVE ME TWO SETS SO THAT

7    I CAN SEE THE UNREDACTED AND THE REDACTED.

8              AND THEN, WE WILL COMPARE, IF I AGREE WITH YOU.  BUT

9    THE GENERAL PRINCIPLE IS THIS IS A CIVILIAN WITNESS WHO SAID:

10                  "YEAH, I SAW MR. HERRERA STAB THE GUY IN THE

11                  BACK," AND WE'RE GOING TO PROTECT THAT GUY'S NAME.

12        **MR. SABELLI:**  AND, YOUR HONOR, WOULD THE TERM

13   "CIVILIAN WITNESS" INCLUDE ALSO GANG MEMBERS OR RIVAL GANG

14   MEMBERS?  LET'S SAY THERE'S A RIVAL GANG MEMBER WITH EVERY

15   REASON IN THE WORLD, ACCORDING TO THE SFPD TO WANT TO VISIT HARM

16   ON MR. HERRERA, AND THAT PERSON IS NOT A POLICE OFFICER, AND

17   THEREFORE A CIVILIAN BY DEFINITION, THAT PERSON INFORMS AGAINST

18   MR. HERRERA, IS THAT PERSON GOING TO BE --

19        **THE COURT:**  ANYONE WHO IS INFORMING AGAINST MR.

20   HERRERA OUGHT TO BE REDACTED BECAUSE HE WOULD HAVE AN INCENTIVE

21   TO BUMP THEM OFF, ACCORDING TO THE PROSECUTOR. BUT I STILL WANT

22   TO SEE WHO IT IS.  AND IF IT'S NOT IMMEDIATELY CLEAR, YOU GOT TO

23   EXPLAIN WHY IT SHOULD BE REDACTED.  I'M NOT JUST GOING TO RUBBER

24   STAMP IT, ALL RIGHT?

25              WE GOT TO MOVE ON.  I HAVE A HEARING IN 20 MINUTES.

1    ALL RIGHT?

2                    "RECORDS OF ALLEGED RICO ENTERPRISE MS13, OR

3              ANY OF ITS AFFILIATES, SURENOS."

4              SURELY YOU MUST HAVE FILES THAT RELATE TO THESE

5    GANGS.

6              **MS. WAGNER:** YES, YOUR HONOR.  AND AS I PROFFERED

7    BEFORE, BASED ON MY CONVERSATIONS WITH THE PERSONNEL FROM THE

8    GANG TASK FORCE, THEY ARE ORGANIZED AND CONTAINED WITHIN THAT

9    UNIT ACCORDING TO SUSPECT AND EVENT.  THERE ISN'T ANY

10   CENTRALIZED --

11             **THE COURT:** HOW MANY WE GOT?  HOW MANY WE GOT, 31

12   GANG MEMBERS HERE?

13             **MS. WAGNER:** RIGHT.

14             **THE COURT:** WHY DON'T YOU JUST TURN OVER ALL 31

15   FILES?

16             **MS. WAGNER:** WELL, IF THAT'S WHAT THE COURT ORDERS.

17             **THE COURT:** THAT'S REASONABLE.  IT'S A LOT OF STUFF.

18   LOOK, THIS IS A HUGE CASE.  NO MATTER HOW MUCH WORK YOU HAVE, I

19   PROMISE YOU I'M DOING TEN TIMES AS MUCH.

20             SO -- BUT THIS IS -- IF THAT'S THE WAY YOU ORGANIZE

21   IT, I THINK THAT'S A LEGITIMATE DISCOVERY TO SEE, SO TURN OVER

22   ALL THE FILES ON ALL GANG MEMBERS.

23             **MS. WAGNER:** SO JUST TO BE CLEAR, THAT WILL BE THE

24   DEPARTMENT WILL PRODUCE EACH OF THE 31 INDICTED DEFENDANTS'

25   ALPHA FILES WITH TWO SETS, ONE REDACTED ONE UNREDACTED, AND THE

1    AFFIDAVIT RELATING TO EACH REDACTION, OR PROPOSED REDACTION.

2             **THE COURT:** RIGHT.

3             **MS. WAGNER:** OKAY.

4             **THE COURT:** ALL RIGHT.  NOW, IF YOU NEED MORE TIME

5    THAN NEXT WEEK TO GET THAT DONE, THEN, OKAY.

6             **MR. SABELLI:** YOUR HONOR,  I WOULD SUGGEST THAT

7    THERE'S NO PRINCIPLE TO LIMIT IT TO THE 31 PEOPLE.  THERE ARE

8    PLENTY OF FOLKS WHO ARE ALLEGEDLY MEMBERS OF MS13.

9             **THE COURT:** NO, WE'VE GOT TO LIMIT IT SOMEWHERE.

10   YOU'RE GOING TO TALK ME OUT OF THE 31, MR. SABELLI.

11            **MR. SABELLI:** NO. NO.

12            **THE COURT:** ALL RIGHT.  STICK WITH THE 31.

13            NOW, LET ME BE JUST REAL CLEAR, THOUGH, MS. WAGNER.

14   I'M SURPRISED TO HEAR YOU SAY THAT THEY DON'T HAVE A SPECIAL

15   FILE CABINET THAT IS DEVOTED TO THE MS13.  AND, IN OTHER WORDS,

16   IF I WAS IN THE POLICE DEPARTMENT, AND JUST BASED ON THAT OTHER

17   CASE, I HAVE SOME SUSPICION THAT THEY HAVE SOME WAY OF

18   ORGANIZING THE MATERIALS SO THAT THE MS13 PEOPLE ARE ALL KIND OF

19   SEGREGATED OUT.

20            YOU TELLING ME THERE'S NOTHING LIKE THAT?

21            **MS. WAGNER:** I'M TELLING YOU THAT'S WHAT SERGEANT

22   MCDONNELL INDICATED TO ME.

23            I'M SURE IT'S TRUE THAT EACH OF THE INSPECTORS WHO

24   CONDUCT THESE INVESTIGATIONS ARE WELL-CONVERSANT WITH GANG

25   AFFILIATION AS TO EACH SUBJECT, AND THEY SHARE THAT COMMON

1    KNOWLEDGE AMONGST THEMSELVES.

2              HOWEVER -- AND I'D BE HAPPY TO RETURN TO THE UNIT AND

3    DOUBLE-CHECK THAT ANSWER.  BUT THAT IS AS I UNDERSTAND IT.

4              **THE COURT:**  WELL, I THINK YOU SHOULD DOUBLE-CHECK

5    THAT.

6              AND IF IT TURNS OUT, MR. SABELLI, THAT YOU START

7    GENERATING INFORMATION THAT THEY HAVE AN ENTIRE FILE, OR FILE

8    CABINET OR SOMETHING DEVOTED TO MS13 WE WILL HAVE AN EVIDENTIARY

9    HEARING.  WE WILL HAVE THE POLICE OFFICERS COME OVER HERE AND

10   TESTIFY UNDER OATH ABOUT HOW THEY ORGANIZE IT.

11             **MR. SABELLI:**  AND, YOUR HONOR, THAT IS, IN FACT, THE

12   REQUEST I HAD MADE.  TO BACK UP A STEP -- AND I KNOW THE COURT

13   IS CONCERNED ABOUT TIME.  BUT THIS IS MAYBE THE MOST IMPORTANT

14   POINT ON THE ENTIRE SUBPOENA FOR US.  IT'S MY EXPERIENCE HAVING

15   DONE MANY GANG CASES IN SAN FRANCISCO THAT THE GANG TASK FORCE

16   HAS KEPT GANG FILES.

17             NOW, I'VE NEVER AN MS13 FILE BECAUSE THIS IS MY FIRST

18   MAJOR MS13 CASE.  BUT I KNOW THAT IN THE PAST I'VE SEEN WEST

19   MOB, BIG BLOCK FILES.

20             **THE COURT:**  WELL, WE ARE -- MS. WAGNER, GO BACK.  I'M

21   HIGHLY-SUSPICIOUS, SO I WANT YOU TO FIND OUT FOR SURE.  AND WE

22   MAY HAVE AN EVIDENTIARY HEARING.   WE WILL COME TO THE

23   EVIDENTIARY HEARING POSSIBILITY LATER.  RECORDS RELATED TO

24   FLORES.  WHO ARE THOSE PEOPLE?

25             **MR. SABELLI:**  AND, YOUR HONOR, I WILL FOLLOW UP ON

1   THE SECOND REQUEST WITH A SHORT BRIEF EXPLAINING, JUST IN THE

2   INTEREST OF TIME, WHY IT IS THAT WE BELIEVE THAT THESE FILES

3   EXIST.  AND WE'LL BE ASKING FOR AN EVIDENTIARY HEARING.  I THINK

4   IT'S THAT IMPORTANT FOR US, YOUR HONOR.

5              **THE COURT:**  ALL RIGHT.  ALL RIGHT.

6              NUMBER THREE, THOUGH:

7                  "RECORDS RELATING TO FLORES."  WHO ARE THOSE

8   PEOPLE?

9              **MR. SABELLI:**  YOUR HONOR, WE REDACTED THEM FROM OUR

10  JOINT STATEMENT. MR. FLORES -- AND I DON'T KNOW IF THE COURT

11  WANTS TO REDACT IT FROM THESE PROCEEDINGS.  MR. FLORES IS MR.

12  ROSENBUSH'S CLIENT.  HE IS A PERSON WHO THE UNITED STATES

13  BELIEVES MAY HAVE BEEN THE INTELLECTUAL ACTOR OF THE MURDER THAT

14  MY CLIENT IS ACCUSED OF.

15             **THE COURT:**  ARE THESE GANG MEMBERS?  ARE THEY

16  INDIVIDUAL --

17             **MR. SABELLI:**  GANG MEMBER.  HE'S A GANG MEMBER.

18             **THE COURT:**  ALL THREE OF THESE ARE DEFENDANTS?

19             **MR. SABELLI:**  NO.  THE LAST PERSON IS AN INFORMANT

20  FOR THE UNITED STATES.  HE'S  A GANG MEMBER OR A FORMER GANG

21  MEMBER.  I DON'T KNOW WHAT HIS CURRENT STATUS IS.  BUT HE'S ONE

22  OF THE PEOPLE WE BELIEVE TO BE AN INFORMANT AGAINST MR. HERRERA.

23  AND OTHERS.  AND SO MR. --

24             **INTERPRETER BASKER:**  HE'S ONE OF THE PEOPLE THAT?

25             **MR. SABELLI:**  WE BELIEVE IS AN INFORMANT AGAINST MR.

1    HERRERA.

2    **THE COURT:** WELL, I DON'T KNOW.  THESE NAMES DON'T

3    EVEN MEAN ANYTHING TO ME.

4    WHAT'S YOUR OBJECTION TO PRODUCING THESE, OR DO YOU

5    HAVE ONE?

6    **MS. WAGNER:** WELL, YOUR HONOR, I THINK THAT AS TO

7    MORIS FLORES THAT ORDER OR ORDER FOR PRODUCTION WOULD ALREADY BE

8    SUBSUMED WITHIN YOUR PREVIOUS RULING AS TO NUMBER --

9    **THE COURT:** TWO?

10   **MS. WAGNER:** YES, YOUR HONOR.  WHERE YOU'RE ASKING

11   FOR EACH OF THE 31. AND THEN, AS TO ROBERTO CLAROS ACOSTA,

12   ACCORDING TO GANG TASK FORCE I DON'T THINK THERE IS AN ALPHA

13   FILE.  WE WOULD NEED TO RESEARCH INDIVIDUAL INCIDENTS.

14   **THE COURT:** ALL RIGHT.  LOOK, PRODUCE THEM IF YOU'VE

15   GOT THEM.

16   **MS. WAGNER:** YES, YOUR HONOR.

17   **THE COURT:** END OF STORY.

18   NUMBER FOUR:

19   "PHONE RECORDS OF INDIVIDUALS WITH WHOM HERRERA

20   IS ALLEGED TO HAVE COMMUNICATED WITHIN 24 HOURS," ET

21   CETERA.

22   WELL, IF YOU GOT THOSE PHONE RECORDS YOU SHOULD

23   PRODUCE THEM.

24   **MS. WAGNER:** YES, YOUR HONOR.

25   **THE COURT:** IF YOU DON'T HAVE THEM, YOU DON'T HAVE TO

1    GO GET THEM.

2              **MS. WAGNER:**  THAT WAS OUR POSITION, YOUR HONOR.

3              **THE COURT:**  WELL, THEN THAT POSITION IS CORRECT.  SO

4    YOU GOT TO PRODUCE THEM IF YOU HAVE THEM.  OTHERWISE, YOU DON'T

5    HAVE TO GO GET THEM.

6              NUMBER FIVE:

7                   "RECORDS OF ANY SEARCH BY SFPD RELATING TO THE

8              CAPITAL HOMICIDE."

9              WELL, I DON'T KNOW WHAT THAT MEANS.  WHAT CAPITAL

10   HOMICIDE?

11             **MR. SABELLI:**  THE CAPITAL HOMICIDE IS THE COUNT THAT

12   CHARGES THE CAPITAL CRIME AGAINST MR. HERRERA.

13             **THE COURT:**  I'M GOING REQUIRE YOU TO DO THAT.  BUT

14   THIS IS SUCH A POORLY-DRAWN REQUEST:  "THE CAPITAL HOMICIDE,"

15   LIKE THE SFPD IS GOING TO KNOW WHAT YOU'RE TALKING ABOUT?

16             **MR. SABELLI:**  WE'VE HAD DISCUSSIONS ABOUT IT, YOUR

17   HONOR, SO I MADE IT CLEAR WHAT THE DATE AND TIME IS.

18             **THE COURT:**  YOU SHOULD PRODUCE THAT, MS. WAGNER.

19             **MS. WAGNER:**  YOUR HONOR, JUST FOR THE RECORD, THAT IS

20   AN OPEN INVESTIGATION AND THE ASSIGNED INSPECTOR IS INSPECTOR

21   CAGNEY OF THE HOMICIDE DETAIL.  SO THERE MIGHT BE SOME

22   DIFFICULTY WITH FULL PRODUCTION OF THAT AS FAR AS IT MIGHT

23   COMPROMISE A ONGOING LOCAL INVESTIGATION.

24             **THE COURT:**  WELL, THEN YOU'LL HAVE TO SUBMIT

25   SOMETHING THAT SHOWS ME THAT'S TRUE.

1      **MR. SABELLI:** AND, YOUR HONOR, I WOULD SUGGEST THAT

2   THAT SHOULD BE PROPERLY LITIGATED.  I'M NOT SURE THERE IS A

3   PRIVILEGE THAT IS APPLICABLE HERE.  THAT'S THE FIRST I'VE HEARD

4   OF THAT, THAT PRIVILEGE BEING ASSERTED HERE.

5          IF IT IS, THEN I'M HAPPY TO ANSWER IT IN WRITING.

6      **THE COURT:** YOU'LL GET YOUR CHANCE.  BUT LET'S SEE IF

7   THERE IS.  IF YOU'RE GOING TO ASSERT SOMETHING WE'RE GOING TO

8   GIVE YOU SOME TIME LINES IN A MINUTE.

9          SIX:

10             "VIDEO OR PHOTO EVIDENCE COLLECTED BY SFPD

11             RELATING TO THE CAPITAL HOMICIDE."

12         WELL, OF COURSE YOU OUGHT TO TURN THAT OVER.  WHY

13   WOULD THAT NOT BE -- SURELY THAT'S WHAT HE'S BEING TRIED FOR,

14   RIGHT?  HERE THIS IS CAPITAL HOMICIDE.

15         SO YOU GOT TO TURN THAT OVER.

16         SIX -- SEVEN:

17             "ANY FORENSIC EVIDENCE COLLECTED BY SFPD

18             RELATING TO THE CASE."

19         WELL, OF COURSE, SAME THING.

20         NOW, HERE, THOUGH, LET'S SAY YOU GOT BULLETS,

21   CASINGS, YOU KNOW.  I WANT TO GIVE YOU FIRST THE CHANCE TO DO

22   ALL THE FORENSICS YOU WANT WITH IT.

23         THEN, AFTER YOU'VE DONE YOUR FORENSICS THEN YOU WOULD

24   HAVE TO TURN IT OVER FOR THEIR EXPERT.  YOU DON'T HAVE TO TURN

25   THIS OVER TO ME, THOUGH. YOU HOLD ON TO FORENSIC EVIDENCE.

1  YOU'RE TALKING ABOUT THINGS LIKE BLOOD SAMPLES AND BULLETS AND

2  ALL THAT?

3          **MR. SABELLI:**  YES, YOUR HONOR.

4          **THE COURT:**  WELL, OF COURSE HIS EXPERT OUGHT TO HAVE

5  A CHANCE TO LOOK AT THOSE, TOO, BUT YOUR EXPERT GOES FIRST.

6          **MS. WAGNER:**  UNDERSTOOD, YOUR HONOR.

7          **THE COURT:**  SO THIS ONE WILL BE ON A SLOWER TRACK

8  BECAUSE I'M SURE YOUR EXPERTS HAVEN'T FINISHED THEIR WORK YET.

9          **MR. SABELLI:**  AND, YOUR HONOR, IT'S BEEN MY

10  EXPERIENCE IN THE HALL OF JUSTICE THAT FORENSIC ANALYSIS DONE BY

11  THE SF CRIME LAB CAN TAKE SIX TO EIGHT MONTHS.  AND THAT WITH

12  THE SCHEDULE IN THIS CASE IT WOULD MAKE IT VERY DIFFICULT FOR US

13  TO DO OUR OWN FORENSIC ANALYSIS.

14          SO I'M GOING TO ASK THE COURT FOR SOME TIME LINES

15  WITH RESPECT TO THAT.

16          **THE COURT:**  ALL RIGHT.  WELL, THAT'S A GOOD POINT.

17  SO WE WILL GIVE YOU A DEADLINE SO YOU CAN GET YOURS DONE, TOO.

18          OKAY. DO YOU EVEN KNOW THIS?  I'M JUST CURIOUS.  DO

19  YOU HAVE BULLETS?  DO YOU HAVE CASINGS?  DO YOU HAVE BLOOD

20  SUSTAINS?  WHAT HAVE YOU GOT THERE BY WAY OF FORENSIC EVIDENCE?

21          **MS. WAGNER:**  YOUR HONOR, I REALLY DON'T HAVE ANY

22  KNOWLEDGE OF THE FORENSIC EVIDENCE.  BUT I WILL SAY THAT I AM

23  PREPARED AND WILLING TO  BE INSTRUMENTAL IN MEETING TIME LINES

24  WITH RESPECT TO OUR TESTING SO THAT IT CAN BE TURNED OVER FOR

25  SECONDARY EVALUATION.

1        **THE COURT:**  "RECORDS" -- NUMBER EIGHT -- "RECORDS

2        RELATING TO HOMICIDES COMMITTED BY EQUALLY

3        CULPABLE" --

4        **MS. WAGNER:**  THIS IS ONE TO WHICH THE COURT HAD --

5        **THE COURT:**  THIS ONE -- I'M NOT GOING TO REQUIRE --

6   THIS IS BEYOND THE PALE, HAS LEGAL CONCLUSIONS TO "EQUALLY

7   CULPABLE."

8        NUMBER EIGHT IS NOT GOING TO BE ENFORCED, MR.

9   SABELLI. YOU SHOULDN'T WRITE SOMETHING THAT ARGUMENTATIVE.

10       **MR. SABELLI:**  YOUR HONOR, I UNDERSTAND THE COURT'S

11  POSITION, AND I ACCEPT IT, OF COURSE.  HOWEVER, THIS IS A VERY

12  BROADLY-WORDED INDICTMENT THAT LACKS SPECIFICS.  AND IN A DEATH

13  PENALTY CASE WHERE ONE OF THE MITIGATING FACTORS IS WHETHER OR

14  NOT OUR CLIENT IS BEING SUBJECTED TO A CAPITAL ELIGIBLE

15  PROSECUTION EVEN THOUGH OTHERS WHO ARE MORE CULPABLE IN THE SAME

16  AREA, MORE CULPABLE IN THE SENSE OF COMMITTING WORSE CRIMES, ARE

17  NOT BEING CHARGED WITH THE DEATH PENALTY.

18       WE ARE OBLIGATED TO MAKE THAT REQUEST.  I THINK IT'S

19  ONE THAT CAN BE WORKED OUT BETWEEN THE PARTIES, AND THAT'S WHY

20  I'VE INDICATED --

21       **THE COURT:**   MAYBE YOU'LL HAVE TO DO A NEW REQUEST.

22  HERE'S SOMETHING I'VE LEARNED IN THIS JOB.  IF IT'S IN THE

23  BALLPARK I'LL REFORM IT TO SOMETHING REASONABLE.  THIS ONE IS

24  NOT EVEN IN THE BALLPARK.  YOU HAVE TO DO IT ALL OVER AGAIN.  I

25  AM NOT GOING TO FIX IT FOR YOU.

1                    NUMBER NINE.

2              **MR. SABELLI:**  I'LL GET BACK IN THE BALLPARK, THEN

3    YOUR HONOR.

4              **THE COURT:**  WELL, GOOD.

5                    "RECORDS RELATED TO GANG ACTIVITY OF HOMICIDE

6                    VICTIM ARMANDO ESTRADA AND HIS BROTHER."

7              **MS. WAGNER:**  THE DIFFICULTY, YOUR HONOR, ACCORDING TO

8    SERGEANT MCDONNELL IS IN THE FIRST INSTANCE THERE IS NO ALPHA

9    FILE ASSOCIATED WITH ARMANDO ESTRADA.  AND, SECONDARILY, BASED

10   ON THE WORDING OF THIS REQUEST THE SERGEANT DOES NOT BELIEVE THE

11   PERSON TO WHOM IT REFERS AS THE BROTHER IS, IN FACT, HIS

12   BROTHER.

13             HE THINKS IT'S REFERENCING SOMEBODY ELSE.  SO IT'S --

14   I THINK IT'S SIMILARLY UNINTELLIGIBLE AND --

15             **MR. SABELLI:**  YOUR HONOR?

16             **THE COURT:**  WELL, WHAT THEY ARE SAYING IS AS DRAWN

17   THERE IS NO EVIDENCE TO PRODUCE, SO YOU CAN'T MAKE THEM PRODUCE

18   SOMETHING THAT DON'T EXIST.

19             **MR. SABELLI:**  WELL, THAT'S ALMOST WHAT I HEARD.  WHAT

20   I HEARD MS. WAGNER SAY IS THERE'S NO ALPHA FILE.  AND ONE OF THE

21   THINGS I TRIED TO LAY OUT IN OUR PRELUDE TO OUR MOTION IS WE

22   DON'T WANT TO FOCUS EXCLUSIVELY ON AN ALPHA FILE.

23             THE COURT MUST KNOW FROM ITS PREVIOUS HEARINGS IN

24   OTHER CASES SAN FRANCISCO TASK FORCE DOES KEEP INFORMATION IN

25   WAYS THAT MAY BE THE REST OF US WOULDN'T.

1          AND SO THERE MAY BE PLENTY OF INFORMATION ABOUT THE

2     ESTRADA BROTHERS.  AND I DO BELIEVE THEY ARE BROTHERS.  AND I

3     CAN MAKE A SHOWING WITH RESPECT TO THAT.  THEY MAY HAVE

4     INFORMATION WITH RESPECT TO THESE TWO THAT IS NOT KEPT IN A

5     SO-CALLED "ALPHA FILE."

6          IT'S KEPT IN A DESK DRAWER OR A FILE LABELED

7     SOMETHING ELSE.

8          **THE COURT:**  WELL, THAT'S POSSIBLE.  BUT HERE'S THE

9     THING.  I THINK THIS IS ONE THAT YOU HAVE TO TAKE UP AT AN

10    EVIDENTIARY HEARING AND HAVE THE GANG TASK FORCE PEOPLE TESTIFY

11    ABOUT THE WAY THEY KEEP THEIR RECORDS.

12         **MR. SABELLI:**  I AGREE.

13         **THE COURT:**  AND THAT WAY YOU CAN ZERO IN ON SOMETHING

14    THAT IS MANAGEABLE.

15         **MR. SABELLI:**  I AGREE.

16         **THE COURT:**  BUT THIS ONE:

17         "RECORDS RELATED TO THAT" IS SO BROAD AS WRITTEN

18    I'M NOT GOING TO ENFORCE IT.

19         NUMBER 10:

20         "AS TO DEFENDANT HERRERA THE FOLLOWING DOCUMENTS

21         MUST BE PRODUCED. NUMBER A:  COPIES OF ALL SF GANG

22         TASK FORCE FILES RELATED TO THE ACTIVITIES OF THE

23         ORGANIZATION MS13 FROM JANUARY 1996 TO THE PRESENT

24         DATE."

25         WELL, I THINK THAT'S A PRETTY REASONABLE REQUEST

1    EXCEPTING FOR THAT DATE.  WHERE DID THAT DATE COME FROM,

2    JANUARY 1996?

3              **MR. SABELLI:**  THAT IS ALLEGEDLY WHEN MS13 BEGAN ITS

4    OPERATIONS IN SAN FRANCISCO.

5              **THE COURT:**  WHAT IS THE EARLIEST DATE THAT ANY OF THE

6    DEFENDANTS ARE ALLEGED TO HAVE DONE ANYTHING IN THE INDICTMENT?

7              **MR. SABELLI:**  IN THE INDICTMENT I BELIEVE IT'S 1996.

8              **THE COURT:**  THEY SAY FROM 1996, THE INDICTMENT

9    CHARGES?  THAT'S BEYOND THE STATUTE OF LIMITATIONS.

10             **MR. SABELLI:**  BUT THE INDICTMENT CHARGES A RICO

11   ENTERPRISE THAT GOES BACK THAT FAR.  WHETHER OR NOT ANY OF THE

12   OVERT ACTS FALL WITHIN THAT RANGE I AGREE THAT WOULD BE BEYOND.

13   ALTHOUGH IT IS A RICO INDICTMENT. AND SO THE ALLEGATIONS IN THE

14   INDICTMENT I BELIEVE GO BACK TO 1996 AS PART OF THE HISTORY OF

15   THE ORGANIZATION.

16             **THE COURT:**  ALL RIGHT.  THIS ONE I'M GOING TO MODIFY

17   AS FOLLOWS:  YOU DON'T HAVE TO -- THE WORD "RELATED TO" IS SO

18   BROAD, BUT HERE'S WHAT IT'S GOING TO BE.

19             IF WE'RE GOING TO SAY "COPIES," ANY COPIES OF ANY

20   MEMOS THAT ARE DIRECTED TO SUMMARIZING THE HISTORY OF ACTIVITIES

21   OF THE MS GANG AT ANY POINT IN TIME, REALLY.

22             I JUST GOT TO BELIEVE THEY GOT SOMETHING THERE THAT

23   IS LIKE A -- YOU KNOW, A SHORT COURSE ON THE MS13.  SO ANYTHING,

24   ANY MEMORANDUM THAT IS SPECIFICALLY DEVOTED TO THE ONGOING

25   CURRENT EVENTS OF MS13 OR THE HISTORY OF MS13 THAT IS KEPT

1    WITHIN THE FOUR CORNERS OF THE GANG TASK FORCE, YOU GOT TO

2    PRODUCE THAT.

3         **MR. SABELLI:**  LET ME BE SPECIFIC ABOUT TWO TYPES OF

4    DOCUMENTS THAT I THINK EXIST, YOUR HONOR.  ONE IS THAT I'VE SEEN

5    THE GANG VALIDATION MEMOS THAT ARE THE PRODUCT OF WORK BY THE

6    SFPD GANG TASK FORCE, WITH ASSISTANCE FROM THE DISTRICT

7    ATTORNEY.  AND THEY ARE KEPT BY THE GANG TASK FORCE, AT LEAST

8    WITH RESPECT TO AFRICAN-AMERICAN GANGS.

9         I HAVEN'T SEEN ONE IN AN MS13 CONTEXT BECAUSE I

10   HAVEN'T LOOKED FOR ONE.  THAT IS ONE TYPE OF DOCUMENT THAT I

11   WOULD SPECIFICALLY AS THE COURT TO DIRECT MS. WAGNER TO PRODUCE.

12        **MS. WAGNER:**  SIR, I CAN SPEAK TO THAT.  THERE IS NO

13   PARTICULAR VALIDATION MEMORANDUM THAT OCCURS ACCORDING TO THE

14   TASK FORCE.  IT'S THE COURT THAT MAKES THE VALIDATION

15   CONCLUSION.  HOWEVER, THERE IS A DOCUMENT SOMETIMES CONTAINED

16   WITHIN THE ALPHA FILE THAT IS A CHECK-THE-BOX FORM INDICATING

17   PARTICULAR FACTS THAT SUPPORT THE ASSERTION OF GANG AFFILIATION.

18        AND SO THAT WOULD BE NECESSARILY PRODUCED ALONG WITH

19   THE ALPHA FILE, AND THE COURT WILL FIND THAT AND REVIEW IT.

20        **MR. SABELLI:**  WE'RE TALKING ABOUT TWO DIFFERENT

21   THINGS.  THE GANG VALIDATION SHEET THAT SHE'S TALKING ABOUT

22   REFERS TO AN INDIVIDUAL.  IT'S GOT 11 CRITERIA.  AND THE LAST

23   ONE BEING "SELF-ADMISSION."  THE FIRST ONE BEING -- THERE'S NO

24   NEED TO GO INTO THEM.

25        I'M NOT TALKING ABOUT VALIDATION OF AN INDIVIDUAL.

1   I'M TALKING ABOUT THE GANG TASK FORCE TOGETHER WITH THE DISTRICT

2   ATTORNEY VALIDATING THE EXISTENCE OF A GANG.  AND IT'S CALLED "A

3   GANG VALIDATION MEMO."

4           AND I'VE SEEN THEM IN ANOTHER CONTEXT, IN THE

5   AFRICAN-AMERICAN GANG CONTEXT.

6           NOW, IF MS. WAGNER TALKS TO HER FOLKS, AND AT AN

7   EVIDENTIARY HEARING THEY COME IN HERE AND SAY:

8               "WE DON'T DO THOSE ANYMORE," THEN CERTAINLY

9   THAT'S SOMETHING THE COURT WILL DECIDE WHETHER OR NOT THAT'S

10  TRUE BASED UPON THE EVIDENCE PRESENTED.

11          BUT THOSE THINGS NEED TO BE INQUIRED ABOUT

12  SPECIFICALLY, BECAUSE THERE WOULD BE A MEMO ABOUT THE GANGS

13  ABOUT A SPECIFIC GANG PRODUCED BY THE GANG TASK FORCE.

14          THE SECOND SPECIFIC ITEM THAT I'M GOING TO ASK FOR,

15  YOUR HONOR, IS GRANT APPLICATIONS SUBMITTED BY THE GANG TASK

16  FORCE TO THE DEPARTMENT OF JUSTICE BASED UPON THE EXISTENCE OF

17  MS13 OR LATINO GANGS AND SETTING FORTH WHAT THEY BELIEVE TO BE

18  THE NATURE, HISTORY AND STRUCTURE OF LATINO GANGS, INCLUDING

19  MS13, AS A BASIS FOR GETTING FUNDING FROM THE UNITED STATES

20  GOVERNMENT, SPECIFICALLY THE DEPARTMENT OF JUSTICE.

21          AND I BELIEVE THOSE EXIST.

22          **THE COURT:**  ALL RIGHT.  I NEED TO STOP HERE FOR A

23  MINUTE.  I'M SORRY THAT I HAVE RUN OUT OF TIME.  I THOUGHT THIS

24  WAS GOING TO BE EASY.  BUT I GOT A BETTER IDEA.

25          MR. GOODMAN, I STILL HAVE TO DEAL WITH YOUR CASE.

1          ALL RIGHT. I'M GOING TO ALLOW AN EVIDENTIARY HEARING.

2    YOU NEED TO FIGURE OUT -- I'LL LET YOU HAVE TWO WITNESSES OVER

3    THERE.  SO YOU FIGURE OUT WHO YOU WANT, AND WE WILL HAVE AN

4    EVIDENTIARY HEARING DEVOTED TO THE LOCATION AND EXISTENCE OF

5    FILES AND DOCUMENTS.

6          **MR. SABELLI:**  THAT MAKES SENSE, YOUR HONOR.

7          **THE COURT:**  ALL RIGHT. I AM REMEMBERING SOME OF THIS

8    FROM THE OTHER CASE, BUT I DON'T REMEMBER ANYMORE. BUT THE WAY

9    TO GET AT THIS IS TO SEE WHAT THEY DO AND THEY DON'T HAVE,

10   INCLUDING NOT JUST THE OFFICIAL FILES BUT WHAT THEY KEEP IN

11   THEIR DESK DRAWERS, TOO.

12          SOMETIMES THAT'S MORE IMPORTANT.  BUT YOU KNOW WHAT

13   I'M GOING TO DO ON THIS NOW, MS. WAGNER.

14          **MS. WAGNER:**  YES, YOUR HONOR.

15          **THE COURT:**  NOW WHAT I URGE YOU, AT LEAST YOU SEE

16   HOW I'M GOING TO RULE ON SOME OF THESE.  YOU TWO MEET AND

17   CONFER.  AND, PLEASE, I'M BEGGING YOU.  I GOT SO MUCH WORK TO

18   DO.  CAN YOU PLEASE TRY TO GET THIS MORE -- MORE AGREED UPON SO

19   THAT I DON'T HAVE AS MUCH TO DECIDE?

20          AND IF NOT, YOU KNOW I'LL EVENTUALLY GET AROUND TO

21   IT. BUT IT DOES SEEM TO ME THAT PROBABLY ABOUT HALF OF WHAT MR.

22   SABELLI WANTS IS YOU GOT TO PRODUCE IT.

23          **MS. WAGNER:**  YES, YOUR HONOR.

24          **THE COURT:**  MAYBE TWO-THIRDS. ALL RIGHT.  I'M SORRY.

25   THAT'S AS FAR AS I CAN GET BECAUSE I'VE GOT THESE OTHER LAWYERS

| | |
|---|---|
| 1 | HERE.  BUT I HAVE TO DEAL WITH MR. GOODMAN.  AND I MADE A NOTE |
| 2 | THAT WE HAVEN'T FINISHED THIS, BUT I'M ASKING YOU TO MEET AND |
| 3 | CONFER AGAIN.  AND WE WILL SET A DATE FOR AN EVIDENTIARY |
| 4 | HEARING. |
| 5 | **MS. WAGNER:**  SHALL THE DEPARTMENT BEGIN WITH |
| 6 | PRODUCTION OF -- |
| 7 | **THE COURT:**  I THINK GO AHEAD WITH WHAT YOU'RE WILLING |
| 8 | TO PRODUCE, ANYWAY. |
| 9 | **MS. WAGNER:**  OKAY. |
| 10 | **THE COURT:**  BECAUSE IT WILL BE A ROLLING TYPE THING. |
| 11 | AND I NEED TO LOOK AT THE CALENDAR.  WE'RE GOING NEED ABOUT HALF |
| 12 | A DAY FOR AN EVIDENTIARY HEARING. |
| 13 | **MR. SABELLI:**  YOUR HONOR, WE CAN CERTAINLY AGREE UPON |
| 14 | THAT.  MS. WAGNER AND I CAN CONFER WITH MS. TOLAND AND TRY TO |
| 15 | FIGURE OUT A DATE, IF YOU PREFER.  I KNOW THE COURT IS PRESSED |
| 16 | NOW.  WE CAN CERTAINLY REACH MS. TOLAND AND TRY TO DO THAT. |
| 17 | **THE COURT:**  I'M SORRY THAT I DIDN'T WHEN WE SET THE |
| 18 | CALENDAR UP. I THINK MY STAFF HAD NO CLUE THAT THESE WERE GOING |
| 19 | TO BE SO HARD TO -- WE REALLY -- YOU KNOW, THIS WOULD TAKE |
| 20 | ANOTHER HOUR TO GET THROUGH. AND -- |
| 21 | **MR. SABELLI:**  WE UNDERSTAND, YOUR HONOR. |
| 22 | **THE COURT:**  THIS IS NOT YOUR PROBLEM WE JUST DIDN'T |
| 23 | DO A GOOD JOB ON CALENDARING TODAY. |
| 24 | **MR. SABELLI:**  YOUR HONOR, WE WILL FOLLOW-UP WITH |
| 25 | MS. TOLAND.  WE WILL SEE YOU ON THAT OCCASION. |

| 1 | **THE COURT:** THANK YOU.  I KNOW WE HAVEN'T FINISHED, |
| 2 | BUT WE GOT HALF THE WAY THROUGH IT. |
| 3 | **MR. SABELLI:** YOUR HONOR, MAY I MAKE AN INQUIRY? |
| 4 | MOST OF THE DEFENDANTS IN THIS  CASE OR THEIR LAWYERS ARE ASKING |
| 5 | WHERE WE ARE GOING TO HAVE THE EVIDENTIARY NEXT WEEK.  IS TO |
| 6 | GOING TO BE HERE OR IN OAKLAND? |
| 7 | **THE COURT:** I BELIEVE -- DIDN'T WE SET IT UP THAT |
| 8 | EVERYBODY WOULD BE GIVEN A NOTICE? |
| 9 | **THE CLERK:** IT'S GOING TO BE HERE IN SAN FRANCISCO ON |
| 10 | THE 17TH FLOOR. |
| 11 | **MR. SABELLI:** OKAY.  SAN FRANCISCO.  THANK YOU, YOUR |
| 12 | HONOR. |
| 13 | **THE COURT:** 17?  I THOUGHT IT WAS GOING TO BE IN THE |
| 14 | CEREMONIAL COURTROOM. |
| 15 | **THE CLERK:** WE'VE HAD TO MOVE TO THE SECURE |
| 16 | COURTROOM. |
| 17 | **THE COURT:** SECURE COURTROOM?  THAT'S GOING TO BE |
| 18 | REAL TIGHT, THEN. |
| 19 | **MR. SABELLI:** I'LL LET EVERYONE KNOW, THEN. |
| 20 | **THE COURT:** I'M SORRY.  IT'S GOING TO BE A BIT OF A |
| 21 | MESS, BUT WE'RE GOING TO DO IT OVER HERE. |
| 22 | (THEREUPON, THIS HEARING WAS CONCLUDED.) |
| 23 | |
| 24 | |
| 25 | |