IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **ORDER RE MOTIONS FOR BILLS OF PARTICULARS AND DISCOVERY RE THIRD SUPERCEDING INDICTMENT** |
| IVAN CERNA, *et al.* | |
| Defendants. / | |

**INTRODUCTION**

This RICO gang prosecution commenced in October 2008. The third superceding indictment was filed on September 24, 2009. It alleged 60 counts against 29 defendants arising from alleged actions of the MS-13 gang. Count 1 charged 24 defendants with a racketeering conspiracy. Counts 2 and 3 respectively charged the same 24 defendants with conspiracy to commit murder in aid of racketeering, and conspiracy to commit assault with a dangerous weapon in aid of racketeering. Count 4 charged 19 defendants individually (without alleging conspiracy) with use or possession of a firearm in furtherance of a crime of violence. The remaining 56 counts, which were separate from the larger RICO conspiracy, charged a single defendant or small groups of defendants with murder in aid of racketeering (Counts 5, 6, 10, 13, 17, and 18), use or possession of a firearm in furtherance of a crime of violence resulting in murder (Counts 7, 11, 14, and 19), use or possession of a firearm in furtherance of a crime of violence (Counts 8, 9, 12, 15, 16, 23, 24, and 33), attempted murder in aid of racketeering (Counts 20, 21, 22 , 26, 28, 30, and 32), assault with a dangerous weapon in aid of racketeering (Count 25, 27, 29, 31, and 34), narcotics offenses (Counts 35–43), conspiracy to commit robbery (Count 44), unlicensed firearms dealing and illegal possession of a firearm by an alien

(Counts 45–46), and attempted exportation of stolen vehicles (Counts 46–60). Six of defendants are eligible for the death penalty, although the government has not yet filed a statutory notice of intent to seek the death penalty as to any of them.

Having so many defendants and charges, trials must proceed in stages. With one exception, all defendants who were not charged with RICO conspiracy have already pleaded guilty or proceeded to trial. The trial date for the last non-RICO defendant to be tried, Rene Montes-Mayorga, will be set on April 6. RICO defendants who are not eligible for the death penalty will be tried in September 2010. Defendants for whom the government eventually files a notice of intent to seek the death penalty will be tried in August 2011.

On March 15, 2010, a hearing was held on all motions by RICO and death eligible defendants directed at the third indictment itself. A motion by defendants who were added to the case for the first time in the third superceding indictment for a different ruling as to a *Brady* order that preceded the new indictment was also heard.

**MOTIONS FOR BILLS OF PARTICULARS**

Ten defendants filed separate motions for bills of particulars, joined by the other RICO and death-eligible defendants.

Rule 7(f) provides that "[t]he court may direct the government to file a bill of particulars." The decision whether to grant a request for a bill of particulars is within the trial court's discretion. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). The Ninth Circuit has explained that the bill of particulars serves three functions: (1) to inform the defendant of the nature of the charges against him with sufficient precision to enable him to prepare for trial, (2) to avoid or minimize the danger of surprise at the time of trial, and (3) to protect against double jeopardy. *United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991).

A bill of particulars should be limited to these purposes: "[a] defendant is not entitled to know all the evidence the government intends to produce but only the theory of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986). Furthermore, the government may add clarity to the allegations via discovery, and "fully discovery obviates

the need for a bill of particulars." *United States v. Giese*, 597 F.2d 1170, 1180–81 (9th Cir. 1979).

\* \* \*

In an order on September 16, 2009 (Dkt. No. 632), the government was previously ordered to produce a bill of particulars for the second superceding indictment. Shortly before the deadline for the government to produce that bill of particulars, the third superceding indictment was returned. The third superceding indictment adds additional counts and additional details, including adding about fifty new overt acts to the racketeering conspiracy count as alleged in the second superceding indictment. The government argues that this particularization moots the need for the previously ordered bill of particulars. Defendants, however, correctly note that while some of the information that the government was ordered to provide was included in the third superceding indictment, some was not. Therefore, the government will be ordered to provide particulars to clarify ambiguities and certain excessive generalities that remain in the third superceding indictment.

With respect to these three conspiracies charged in Counts 1, 2 and 3, the government was previously ordered to provide a bill of particulars clarifying *when* each defendant was alleged to have first joined each conspiracy, as opposed to when the conspiracies themselves first began. Under the *Pinkerton* doctrine, once a defendant joins a conspiracy, he or she is potentially liable for the actions of other defendants in furtherance of the conspiracy. Without knowing *when* they are alleged to have joined each conspiracy, defendants cannot know the universe of conduct against which they must prepare a defense.

The third superceding indictment alleges that these conspiracies began in "the mid 1990s" and continue "through the present." Although the third superceding indictment adds many more details about specific overt acts, it does not state when each defendant was alleged to have joined each conspiracy. The earliest alleged over act was on August 18, 1995, when some defendants were less than ten years old. The government must provide a bill of particulars stating when each defendant is alleged to have joined the conspiracies charged in

Counts 1, 2 and 3. If the dates differ from count to count, then the bill should so clarify the dates for each count.

With respect to Count 2, which alleges conspiracy to commit murder, the government was previously ordered to provide a bill of particulars stating *who* was present at meetings where murders or attempted murders were discussed, *when* and *where* such meetings took place, *what* was said at these meetings, and *what* each defendant allegedly did to indicate their participation in the conspiracy. Some of the new overt acts alleged in the third superceding indictment and incorporated into Count 2 give dates, locations and the identity of some persons present at some meetings where murders or attempted murders were discussed. However, the third superceding indictment does not provide this information for all meetings, nor does it allege what was said at these meetings or what each defendant did to indicate their participation in the conspiracy. The government therefore must supplement the third superceding indictment with a bill of particulars providing this information.

The government was also previously ordered to provide a bill of particulars with regards to Count 4, which charged 19 defendants with use or possession of a firearm in furtherance of a crime of violence since the "mid-1990s." Count 4 charged each defendant with both principal liability and aiding and abetting. Count 4 was not alleged as a conspiracy. Rather, 19 defendants are lumped together in one count but really it should be 19 separate counts and the specifics of each count should have been stated by the grand jury. Previously, the government was ordered to provide a bill of particulars pleading enough detail to fairly apprise each defendant of the incidents of possession or use with which they were being charged. The government was not required to plead the specific serial numbers of the guns allegedly possessed or used — but it was ordered to clarify whether each defendant was charged with carrying, possessing, brandishing, or discharging a gun or guns, whether each was charged with direct or constructive possession, or both; whether each was charged with principal liability, aiding, or abetting, or both; and, where known, the model of each weapon.

The third superceding indictment realleges Count 4 using substantially identical language as that used in the second superceding indictment. Although it incorporates the new

4

overt acts, some of which involve allegations about firearms, it does not answer the questions that the government was previously ordered to clarify. The government's contention that the previous bill of particulars is moot is therefore incorrect. The government still must provide a bill of particulars for Count 4 as previously ordered.

\* \* \*

In addition to the particulars described above, defendant Guillermo Herrera seeks a bill of particulars specifying more details regarding a meeting alleged in the indictment in overt act 38, which states:

> (38) On or about April 21, 2006, in San Francisco, California, Ivan Cerna, a/k/a "Tigre," Angel Noel Guevara, a/k/a "Peloncito," Guillermo Herrera, a/k/a "Shorty," a/k/a "Sparky," Douglas Largaespada, a/k/a "Droopy," and others known and unknown met and Cerna discussed a variety of MS-13 gang business with them, including the necessity for the gang's members to arm themselves, the difficulty of "taxing" other gangs, and his disillusionment with most of the gang's leaders in El Salvador.

His motion for this additional information is **DENIED**. The indictment describes this meeting with sufficient particularity that he is on notice of his alleged conduct. He also requests more information regarding how he allegedly continues to be engaged in the conduct of MS-13 even while incarcerated following his arrest on July 15, 2008, as alleged in the indictment as part of the racketeering conspiracy charge against him. This motion is also **DENIED**. The indictment describes his alleged acts in furtherance of the conspiracy with sufficient evidentiary detail to put him on notice of the allegations against him. He is not entitled to a bill of particulars with all the government's evidentiary detail regarding his alleged conduct.

Defendant Guillermo Herrera's motion for the identities of the victim whom he is alleged to have assaulted in overt act 61 and the victims he is alleged to have forcibly collected money from in overt act 93 is **GRANTED**. The government must provide a bill of particulars identifying each victim by name, or by alias and/or physical description if the full name is not known. If the government contends that revealing the victim's identity would endanger his or her safety, and soon demonstrates a specific threat to the victim to the Court (which may be made *ex parte* or under seal), disclosure may possibly be delayed by further order.

5

Defendant Guillermo Herrera's request for other additional details regarding overt acts alleged in Count 1 is **DENIED**. Except for the identities of the victims, the third superceding indictment sufficiently describes each overt act to put him fully on notice of the allegations and able to prepare a defense.

\* \* \*

Defendants Guillermo Herrera and Jonathan Cruz-Ramirez move for a bill of particulars regarding the allegations against them in Count 13, murder in aid of racketeering of Armando Estrada. The third superceding indictment alleges that on July 11, 2008, defendants Jonathan Cruz-Ramirez and Guillermo Herrera discharged a firearm and thereby murdered Armando Estrada. In particular, defendant they seek a bill of particulars specifying whether they are charged as principals or accomplices, the variant (or variants) of principal liability upon which the government will rely if they are charged as principals, and the identities of other accomplices. It is true that the government was previously ordered to provide all this information in a bill of particulars with regards to the second superceding indictment. However, the third superceding indictment provides substantially more information about the alleged murder and is sufficiently detailed to fully inform defendants of the charges against them. Additionally, at the March 15 hearing, the government confirmed that defendant Guillermo Herrera is charged as a principal and is accused of pulling the trigger himself. Their motions are therefore **DENIED**.

Defendant Cruz-Ramirez also moves for the same information regarding Count 10, the murder in aid of racketeering of Juan Rodriguez. This motion is **GRANTED** to the extent that the government must disclose whether defendant Cruz-Ramirez is accused of pulling the trigger. It is otherwise **DENIED**.

\* \* \*

Defendant Guillermo Herrera also seeks more details regarding meetings where assaults or attempted assaults were discussed, when and where such meetings took place, what was said at those meetings, and what each defendant allegedly did to indicate their participation in the conspiracy to commit assault with a dangerous weapon in aid of racketeering as alleged in

6

Count 3. This motion is **DENIED**. The indictment's lengthy description of numerous such meetings, including in many instances the dates and locations, is sufficient to put defendant Guillermo Herrera on notice of the charges against him in Count 3.

\*       \*       \*

Defendant Moris Flores seeks the following particulars: (1) when he is alleged to have first joined the conspiracies charged in Counts 1–3, (2) the manner in which he allegedly continues to be engaged in the conduct of MS-13 even while incarcerated, (3) the identity of the "putative rival gang member" whom he allegedly threatened to kill with a knife as alleged in over act 9, (4) additional details regarding overt acts 100, 101, 105 and 108, which all involve defendant Flores's interactions with an unidentified potential witness, (5) who was present at meetings where murders or attempted murders and assaults with dangerous weapons in aid of racketeering were discussed, when and where such meetings took place, what was said at these meetings, and what each defendant allegedly did to indicate his participation in the conspiracy, (6) the details regarding Count 4 that were previously ordered to be disclosed in a bill of particulars as described above. Defendant Flores's motion regarding the identities of the victim identified in over act 9 and the witness identified in overt acts 100, 101, 105 and 108 is **GRANTED**. If the government contends that revealing their identities would endanger their safety, and demonstrates a specific threat to them to the Court, production may possibly be delayed by further order. The government must also identify the time and location of the events alleged in overt acts 100, 101, 105 and 108, to the extent known. Defendant Flores's remaining requests are similar to the requests discussed above and are **GRANTED** to the same extent and **DENIED** in all other respects. Defendant Rafael Montoya's motion for a bill of particulars likewise is substantially similar to the requests discussed above and is **GRANTED** to the same extent and **DENIED** in all other respects. Defendant Cruz-Ramirez's requests regarding Counts 1–3 are also **GRANTED** to the same extent as the substantially similar requests discussed above and **DENIED** in all other respects.

\*       \*       \*

7

Defendant Danilo Velasquez's motion seeking particulars regarding overt acts, the gang structure, and additional details of gang meetings is **DENIED**. Defendant Velasquez is adequately on notice of the alleged nature of the RICO enterprise and conspiracy; he is not entitled to a bill of particulars with all of the government's evidence regarding the gang's organizations and its meetings.

\* \* \*

Defendant Ivan Cerna moves for "the journalistic details" regarding ten alleged gang meetings, including the exact time, participant list, and subject matter of discussions for each meeting. For the reasons described above, these meetings are already described in sufficient detail and this motion is **DENIED**. His request for the identity of the witnesses referred to in overt act 100 is **GRANTED**. As noted above, if the government contends that revealing their identities would endanger their safety or the safety of other witnesses, and demonstrates a specific threat to them to the Court, production may be possibly delayed by further order. Defendant Cerna's motion for additional details regarding Counts 1–4 is similar to the other motions discussed above and is **GRANTED** to the same extent. Finally, his motion for a bill of particulars "to confirm that [the government] is not charging Ivan Cerna in Counts Five through Fifty-Six" is **DENIED** as unnecessary. The third superceding indictment clearly states which defendants are charged in each count.

\* \* \*

Defendant Cesar Alvarado moves for a bill of particulars identifying (1) the names of the two people alleged in overt act 64 to have been attacked by him and defendant Jonathan Cruz-Ramirez on or abour August 22, 2007, and (2) additional circumstances regarding the murder of Ivan Miranda on July 31, 2008, as alleged in Count 17, including how defendants Alvarado and Walter Chinchilla-Linar allegedly aided and abetted the killing. His motion regarding the names of the two victims referred to in overt act 64 is **GRANTED**. If the government contends that revealing their identities would endanger their safety or the safety of other witnesses, and demonstrates a specific threat to them to the Court, production possibly may be delayed by further order. His motion regarding Count 17 is **DENIED**. The indictment

8

1 already provides sufficient detail regarding the alleged murder of Ivan Miranda to put defendant
2 Alvarado on notice of the charge against him. In particular, overt act 99 alleges that defendants
3 Alvarado and Chinchilla-Linar, along with Marlon Rivera, Rony Aguilera "and others known
4 and unknown confronted Ivan Miranda and others, and that Rivera and Aguilera stabbed and
5 killed Miranda."

\* \* \*

Defendant Chinchilla-Linar moves for a bill of particulars identifying more details regarding overt act 82. Overt act 82 alleges that on or about March 29, 2008, he shot at several people in San Francisco. He seeks the identities of the people at whom he allegedly shot, where in San Francisco the incident occurred, and additional details about the type of firearm he allegedly used. His motion regarding the names of the victims is **GRANTED**. If the government contends that revealing their identities would endanger their safety or the safety of other witnesses, and demonstrates a specific threat to them to the Court, production may possibly be delayed by further order. Because overt act 82 otherwise provides sufficient detail to defendant Chinchilla-Linar to put him on notice as to the allegations against him, his motion is otherwise **DENIED**.

\* \* \*

Defendant Luis Herrera seeks a bill of particulars regarding Count 18, which charges him with murdering Moises Frias in aid of racketeering on February 19, 2009. He seeks to know whether he is charged as a principal or accomplice, and if as a principal, what variant of principal liability the government will rely on. For the reasons addressed above with regards to the substantially similar motion of defendant Guillermo Herrera, this motion is **GRANTED** to the extent that the government must state whether defendant Luis Herrera is accused of pulling the trigger himself. It is otherwise **DENIED.** Defendant Luis Herrera's remaining requests are similar to the requests discussed above and are **GRANTED** to the same extent and **DENIED** in all other respects.

\* \* \*

9

Defendants Flores and Lopez move to exclude any evidence in support of Count 4 on the grounds that the government failed to provide the information required in the earlier order for a bill of particulars regarding the second amendment indictment. This is **DENIED**. Although the third superceding indictment clearly did not cure all the deficiencies, it added new charges, new defendants, and new overt acts. Scheduling orders which followed the third superceding indictment contemplated another round of motions to address whether a bill of particulars was still necessary. Although the government should have been more conscientious in including all the information requested by the September 16 order in the new indictment, exclusion of the evidence in support of Count 4 would be too harsh a penalty given that a bill of particulars may now cure all remaining deficiencies months before trial.

The government, however, has repeatedly failed to meet its disclosure obligations and to meet deadlines and the Court has increasingly warned that appropriate sanctions may be forthcoming if this pattern continues. Failure to provide the bill of particulars on a timely basis may result in dismissal or other appropriate sanction. This is a sprawling, messy prosecution with an unprecedented number of defendants, time span and counts. To be fair to defendants, more detail is needed and must be provided. The government must provide the bill of particulars by **APRIL 26, 2010, AT NOON**. It may thereafter amend the bill of particulars for good cause (such as discovery of new information) to add or modify any particulars so long as the modifications are not substantial.

**MOTIONS FOR DISCOVERY**

Defendant Rafael Montoya moves for the immediate disclosure of *Brady* material related to confidential informants identified as SA-1211 and SA-1218. As to 1218, the motion is **GRANTED**. The government has already produced *Brady* material regarding 1218 to counsel for defendants Mauricio Urias, Judith Sosa and Rodil Nochez. Moreover, 1218 testified at the public trial of defendant Nochez, so his identity is no longer secret. The government shall produce to all remaining defendants in this action all *Brady* information previously produced to defendants Urias, Sosa and Nochez as to 1218, except that no information need be disclosed

10

that would reveal his location or of his loved ones. 1211, on the other hand, has not yet testified at a trial, so his identity has not yet been publicly confirmed. As to 1211, the motion is **DENIED**.

\* \* \*

Defendants Herrera, Velasquez and Hernandez are new defendants who were added to this matter for the first time in the third superceding indictment. They move to modify previous *Brady* orders in this action (Dkt Nos. 403 and 692) by (1) advancing the deadlines for the government to disclose *Brady* material and (2) reconsidering whether local law enforcement agencies involved in the investigation of MS-13 are "lead investigative agents" for *Brady* purposes. In particular, defendants seek an order for the government to produce under *Brady* all materials in the custody of the BART police and other state and local agencies related to a 2009 shooting at the Daly City BART station.

In the Ninth Circuit, a federal prosecutor is deemed to have constructive knowledge of any *Brady* materials in the possession of a federalized local police officer who acts on behalf of the government as a lead investigative agent. *See United States v. Price*, 566 F.3d 900, 908–09 (9th Cir. 2009). To be deemed a lead investigative agent, the state or local officer must be have been "federalized" by subjecting himself or herself to federal direction, such as by voluntarily becoming the federal prosecutor's lead investigative agent at trial or at an evidentiary hearing. The previous order held that the key inquiry is whether the federal prosecutor had the authority to direct the agent and to instruct the agent to search for records back at the local station.

Defendants rely on *United States v. Risha*, 445 F.3d 298 (3rd. Cir. 2006), which held that whether a local police officer is federalized for *Brady* purposes depends on whether the federal and state forces acted as a team. *Risha* does not compel a different result in the present matter than *Price* did. In *Risha*, the government's counsel worked directly with the state agents in question. The Third Circuit held that in that circumstance, the local agents had been federalized and the government counsel should have specifically inquired of the agents as to *Brady* material. There has been no equivalent showing here. Defendants have not made any offer of proof in support of their motion.

11

1 Most fundamentally, it is important to note that the *Brady* obligation on the prosecutor is
2 a self-executing duty. The defense does not have to ask for, much less move for, production of
3 *Brady* materials. The reason for this is that the prosecutor is in the best position to know what
4 evidence will be of assistance to the defense. *Brady* motions typically arise after conviction,
5 where some pro-defense evidence was unproduced in time for trial but was uncovered after the
6 fact. *Brady* motions need not arise prior to trial. In this case, an evidentiary hearing regarding
7 which federal, state and local agencies were agents for *Brady* purposes was held because the
8 government itself sought an advance ruling on the issue as to the San Francisco Police
9 Department. The previous order laid out the principle that should apply in the undersigned
10 judge's opinion of the law. It is up to the government, however, to apply that principle as to
11 each state and local entity and decide properly under its self-executing duty. This order
12 therefore does not rule whether any other particular state or local entity is or is not an agent for
13 *Brady* purposes. The burden is on the government to execute its duty correctly (and to meet the
14 deadlines in the scheduling order).

\* \* \*

16 Defendant Cruz-Ramirez moves on behalf of all death-eligible defendants for an
17 advanced timetable for disclosure of discovery including *Brady*, *Giglio* and *Jencks* materials,
18 disclosures under Rule 16(a)(1) and Local Rule 16-1(c)(1), and impeachment evidence of
19 government witnesses, as well as for accelerated disclosures specific to death penalty issues,
20 including possible mitigation evidence.
21 For defendants facing the death penalty, Rule 16(a) and Local Rule 16-1(c)(1)
22 disclosures shall be made more than four months before trial. For other RICO defendants, such
23 disclosures shall be made in more than adequate time under the existing schedule (Dkt. No.
24 998). There is no right to *Jencks* materials until after the government witness in question
25 actually testifies, and *Brady* materials need only be disclosed in time to be useful at trial. As

discussed above, *Brady* is a self-executing obligation. For all these reasons, defendants' motions to advance the schedule for production of discovery are **DENIED**.

**IT IS SO ORDERED.**

Dated: March 26, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE