MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

W.S. WILSON LEUNG (CABN 190939)
WIL FRENTZEN (LABN 24421)
Assistant United States Attorneys

THERYN G. GIBBONS (NYBN 4612867)
Trial Attorney, United States Department of Justice, Gang Unit

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6758
   Facsimile: (415) 436-6753
   E-Mail: wilson.leung@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. S3-CR-08-730-WHA |
| v. | GOVERNMENT'S RESPONSE TO DEFENDANT'S STATEMENT AND MOTION TO EXCLUDE (DOCKET #4630) |
| GUILLERMO HERRERA, | |
| Defendant. | |

     The Government respectfully submits this response to defendant Guillermo Herrera's "statement" regarding the examination of Michael Dikovitsky, the document custodian/analyst for Metro PCS, and his motion to exclude a drawing seized from his jail cell during a search (Docket #4630).

     First, the Government is not sure what to make of the "statement" part of Herrera's filing. On its face, it is not a motion. Rather, it seems to be yet another litany of generalized complaints, another attempt by the defendant to lard the record with erroneous "facts" and blame the Government and the Court for his own miscues. See, e.g., Statement at 6-7, items 1-6. How this

list of gripes is relevant to anything pending is inobvious.

In any event, what is clear now from the record is that the defendant knew as of January 17, 2011 (see Exhibit A to Statement, Docket #4630-1) that Metro PCS no longer had any telephone records relating to (415) 678-9815, yet he *still* cross-examined Mr. Dikovitsky about it and — as the Court noted — implied that Mr. Dikovitsky and/or the Government somehow withheld these telephone records from the defense. See Trial Tr at 12096-97 ("THE COURT: Let me ask a question: Mr. Sabelli, are you going to put on evidence that you did make such a request, a timely request, or a subpoena of that information for that phone number? . . . You made a suggestion before the jury that somehow the Government has been covering up information on a number of — or that this witness did.  So you need to follow through on that and not just leave the record — . . .I'm going to make sure that you, in fact, did timely and properly make the subpoena request, so it kind of falls in the same category as that thing about the reporting. . .Maybe you didn't do it in a timely way, but you will deal with it in due course. But a definite suggestion was made to the jury that somehow this witness wasn't playing fair because he only brought the stuff that the Government subpoenaed.  So that needs to be addressed in due course.").  Indeed, it appears that the defendant's subpoena to Metro PCS was issued too late to preserve the records in question — i.e., sometime shortly before January 17, *2011* — and yet the defendant persisted in suggesting to the jury that Mr. Dikovitsky "only brought the stuff that the Government subpoenaed." This is exactly the concern that the Court raised and exactly the type of improper questioning in which the defendant has engaged during this trial. See, e.g., Trial Tr at 8998 (counsel asking Jose Alvarado, "But fair to say back in February 2009, you did know the prosecution *was seeking* the death penalty against Mr. Herrera?" when it cannot be disputed that the Government never sought the death penalty against anyone in this case) (emphasis added).

Second, the defendant's allegation that the Government failed to produce the July 15, 2008 interview of Guillermo Herrera is wildly frivolous.  The undisputed fact is that the Government *did* provide the video to defense counsel.  Defense counsel, however, contends that the file was somehow unviewable beyond the first few minutes.  Yet instead of pursuing the

matter, counsel let the matter drop, which is unusual given counsel's dogged outspokenness on other unfounded[1] discovery complaints.  Thus, the likely truth is counsel saw some sort of tactical advantage in claiming ignorance of the contents of the video, and now — when he has been called on it — is backpedaling furiously to justify his decisions.

Finally, the defendant seeks to exclude evidence of a drawing of a clock that was recovered from his cell, claiming that it was not provided to him.  Fed. R. Crim. P. 16 merely requires that, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph" documents and items that are material to the defense, that the Government intends to use in its case-in-chief, or that was obtained from or belongs to the defendant.  The Government did so: by letters dated December 2, 2008, and December 3, 2008, the Government, among other things, offered to make any and all items seized from the defendants — including defendant Herrera — available for inspection.  Indeed, counsel for Herrera *concedes* that the Government made this offer.  However, unlike, for instance, counsel for Cruz-Ramirez, Flores, Lopez, and Guevara — each of whom arranged to meet with the Government to inspect the evidence — Herrera's counsel did not bother to do so.  The decision of Herrera's counsel not to inspect the items recovered from the search of Herrera's jail cell does not constitute a discovery violation by the Government.  One can lead a horse to water, but one cannot always make it drink.

In addition, Herrera's counsel also complains of the "massive investment of time and resources which would have been required for defense counsel to compare the discovery with the actual evidence to ensure that the Rule 16 production was complete."  Statement at 9.  This is hogwash.  There was no need to "compare" the discovery produced with the evidence in the Government's possession.  Rather, what should have been important to counsel was simply adducing what evidence the Government had in its possession.  Thus, defense counsel could and should have simply asked for the items recovered from his client's jail cell, which was quite

---

[1] See, e.g., defense counsel's claim that the information relating to his outrageous government conduct was disclosed only shortly before his filing of that motion, as well as his more recent claim that the Government failed to provide all the photographic arrays used in the Estrada homicide investigation, both of which were definitively refuted.

limited and discrete. Reviewing the items from this jail search cell would not have taken much time or effort, certainly less time and effort than larding the record with unfounded, generalized complaints.

For the foregoing reasons, the defendant's motion should be denied.

DATED: July 7, 2011

Respectfully submitted,

MELINDA HAAG
United States Attorney

By: /s/
W.S. Wilson Leung
Wil Frentzen
Assistant United States Attorneys

Theryn G. Gibbons
Trial Attorney